Iordanis ANASTASIADIS, Appellant,

v.

S.S. LITTLE JOHN, Appellee.

No. 22249.

United States Court of Appeals
Fifth Circuit.

June 7, 1965.

Rehearing Denied July 6, 1965.

See 347 F.2d 823.

See also 339 F.2d 538.

Sidney Ravkind, Houston, Tex., for appellant.

William C. Bullard, Houston, Tex., for appellee.

Before WISDOM and GEWIN, Circuit Judges, and HANNAY, District Judge.

GEWIN, Circuit Judge.

This is an appeal in admiralty from a final order of the district court dismiss-

ing libelant's cause without prejudice.[1] The suit is *in rem* by a foreign seaman to recover injuries and damages for alleged breach of contract and an alleged tort committed by the appellee's Master. The only question presented is whether the trial court erred in declining jurisdiction of the cause.

The appellant, a Greek national, entered into a contract of employment in Greece, written in Greek, with an agent of appellee's owner. The contract provided that appellant was to join the vessel at Houston, Texas, and that "for any dispute between the seaman and the ship, the Greek law will apply, competent courts to solve any dispute will be the Greek courts at Piraeus. * * * " Appellant joined the ship while it was berthed at dry dock in Galveston, Texas, but he found the conditions of employment unsatisfactory. He alleges a total breach of his employment contract by reason of failure to furnish quarters, edible food, and proper living conditions. In general, appellant claims that the ship presented a condition of squalor and that it was impossible for seamen to serve on it. He determined to discontinue his service on the vessel and apparently made these intentions known, for he asserts that the Master refused or negligently failed to obtain an extension of his visa, which resulted in his being arrested and incarcerated.

The appellee is a vessel of Liberian registry.[2] It is owned by a Liberian corporation, which is wholly owned and controlled by an American corporation, which, in turn, is wholly owned and controlled by a United States citizen.

On February 26, 1963, a libel *in rem* was filed against the vessel seeking damages for breach of contract and for the alleged conduct of appellee's Master in causing appellant to be jailed. The court advanced the cause on the docket so it might be heard before the vessel sailed. The parties could not agree on the applicable law and failed to produce evidence of relevant Greek law. However, the depositions of witnesses were taken and completed about March 25, 1963. Shortly thereafter the ship sailed from the United States. On February 24, 1964, the trial court stayed the action to allow the libelant 120 days after January 27, 1964, in which to institute an action in a forum having jurisdiction, whereupon it would enter an order declining jurisdiction and dismissing the cause without prejudice.[3] In order to foreclose any possibility of prejudice by reason of further litigation in the United States courts, the appellee later agreed to extend, for 120 days beyond the date of any final order which might be entered by the trial court after "all appeals," the time within which it would appear generally in the Greek courts to litigate the appellant's claim. After this agreement, on December 18, 1964, the trial court entered an order of dismissal of the cause without prejudice, from which order Anastasiadis appeals.

Undoubtedly, a federal district court has subject-matter jurisdiction of an *in rem* suit in admiralty in circumstances here present, regardless of the nationality of the parties or the situs of the events and transactions in controversy, even though the parties have stipulated that disputes shall be settled be-

1. A former appeal was dismissed for lack of a final order. Anastasiadis v. SS Little John (5 Cir. 1964) 339 F.2d 538. Subsequent to the dismissal of the appeal, the parties resubmitted the case to the district court, which entered a final order of dismissal on December 18, 1964. An appeal was perfected from this order, and, with the permission of this Court and by stipulation of the parties, the merits of the case were resubmitted on the same briefs and oral argument to the panel which heard arguments on the prior appeal.

2. In his original complaint the libelant alleged on information and belief that the vessel was of Liberian registry, although the appellee's agents represented to him that it would be registered under the Lebanese flag. He further alleges that upon arrival he discovered that the vessel had no registry. Subsequently, it was actually registered under the Liberian flag.

3. An appeal from this order was dismissed. See footnote 1 supra.

fore a foreign court. The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1884); Canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932); see Benedict on Admiralty (6th Ed.) Vol. 1, §§ 82–84. In such event, there would still remain a choice-of-law problem; whether to enforce the law of Greece as agreed, the law of the country of the vessel's registry, or the law of the forum. However, it has been established in a long line of decisions that an American admiralty court may in its discretion, decline to accept jurisdiction of a controversy between foreigners. Canada Malting Co. v. Paterson Steamships, Ltd., supra, 285 U.S. at 421, 52 S.Ct. at 415, 76 L.Ed. at 841; 1 Norris, The Law of Seamen, § 26 (2d ed. 1962); 1 Benedict, Admiralty, § 84 (1940). The only question before us in the instant case is whether the trial court abused its discretion in declining jurisdiction of the controversy, and we therefore need not reach the choice-of-law problem.

Both parties place reliance on the leading case of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). That case dealt primarily with the circumstances under which a foreign seaman is entitled to invoke the Jones Act, 46 U.S.C.A. § 688, as a remedy for his personal injuries. The real issue in Lauritzen, therefore, was choice of law, not the discretionary assumption of jurisdiction, but it seems generally agreed that the criteria set out in that opinion serve as an appropriate yardstick for a district court in deciding whether the United States courts should accept or decline jurisdiction of a controversy which is essentially foreign. See Zouras v. Menelaus Shipping Co., (1 Cir. 1964) 336 F.2d 209.

The Supreme Court, recognizing the advantages of achieving stability in the application of the general maritime law, held in Lauritzen that the right of an alien seaman to invoke the Jones Act must be determined by "ascertaining and valuing [the] points of contact between the transaction and the states or governments, whose competing laws are involved," and by weighing "the significance of one or more connecting factors between the shipping transaction regulated and the national interest served by the assertion of authority." 345 U.S. at 582, 73 S.Ct. at 928, 97 L.Ed. at 1267. Some of the significant contacts outlined in Lauritzen are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place of contract; and (6) the inaccessibility of a foreign forum. The Second Circuit has concluded that "something between minimal and preponderant contacts is necessary," and "that the test is that 'substantial' contacts are necessary." Bartholomew v. Universe Tankships, Inc., (2 Cir. 1959) 263 F.2d 437, 440. Of course, in assessing the points of contact which are relevant in determining whether to accept or decline jurisdiction, appropriate adjustments must be made in the weight to be accorded the various factors set out in Lauritzen because the issue before us is the assumption of jurisdiction, not choice of law.

While the appellant has alleged a tort, his claim is essentially one for breach of contract. He is a Greek national and his allegiance is to that country. The ship is of foreign registry and flies a foreign flag. His contract of employment was made in Greece, and specifically provides that any dispute will be litigated in the Greek courts under Greek law. There has been no showing that a Greek forum would be inaccessible or that Greek laws would be unjust if applied and enforced. To the contrary, the appellee has formally agreed of record to appear in the Greek courts and litigate appellant's cause of action. The most significant contacts with the United States are that the alleged breach of contract and tort occurred in this country, and the fact that beneficial ownership of the vessel is in a United States citizen. There is no positive proof that the vessel is regularly engaged, or intends to be engaged, in substantial commerce within the terri-

torial United States. Apparently its presence in this country was only transitory.

■ The appellant relies heavily on the fact that the ship is owned and controlled by United States interests. Voyiatzis v. National Shipping & Trading Corp., (S.D.N.Y.1961) 199 F.Supp. 920; Southern Cross Steamship Corp. v. Firipis, (4 Cir. 1960) 285 F.2d 651; Pavlou v. Ocean Traders Marine Corp., (S.D. N.Y.1962) 211 F.Supp. 320. Beneficial ownership is an important factor but it is not the sole determinative factor. The main thrust of Firipis Voyiatzis, and Pavlou is merely that, as recognized in Lauritzen, courts will often pierce a nominal foreign registry where American laws are sought to be enforced against a ship beneficially owned by American interests in determining how much weight to be accorded the significant factor of the ship's flag. This factor, however, was not controlling in those cases and is not necessarily controlling here. Furthermore, it must be remembered that the trial court is free to exercise some discretion in its assessment of the factors relevant to its decision whether to accept or decline jurisdiction. Moreover, in Pavlou there were additional significant contacts with the United States. The owner had delegated almost all of the functions of management and operation of its business to a managing agent in New York, and the ship was generally engaged in chartering for the United States and Canada.

The appellant also relies on Bartholomew v. Universe Tankships, Inc., (2 Cir. 1959) 263 F.2d 437, (and similar cases) in which it was held that the district court properly assumed jurisdiction over a foreign seaman's Jones Act suit to recover damages for an assault committed within the United States. While there are similarities between Bartholomew and the instant case, there are also significant differences. For example, in Bartholomew all officers of the foreign corporation which owned the vessel were Americans; the corporation's principal place of business was in New York; the articles for the voyage were signed in Baltimore; the seaman had lived in Brooklyn since signing on and had signed a declaration of intention to become an American citizen; his claim was for personal injuries under the Jones Act and was not essentially *ex contractu;* there was no agreement as to what law would govern in the event of injury and no stipulation as to the forum. Also, the voyage began and ended in the United States.

As noted in Lauritzen, the *lex loci delicti* test in maritime tort cases is necessarily of limited application "because of the varieties of legal authority over waters [a ship] may navigate." 345 U.S. 571, 583, 73 S.Ct. 921, 929, 97 L.Ed. 1254, 1268. Therefore, the Supreme Court declined to apply the Jones Act solely on the basis of *lex loci delicti commissi.* We do not think it an abuse of the trial court's discretion to refuse to accord it controlling weight here.

■ In summary, we agree with the district court that an analysis of the contacts in this case militate against the assumption of jurisdiction. As the Court recognized in Lauritzen, where the parties specifically contract as to governing law, "[e]xcept as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply." 345 U.S. at 588–589, 73 S.Ct. at 931, 97 L.Ed. at 1271. The contract in the instant case provided not only that Greek law would be determinative but also that the Greek courts were to be the proper forum for the litigation of claims arising out of the contract. We see no reason, in the circumstances of this case, why this provision should not be given effect in the absence of any suggestion in the record that Greece is an inconvenient forum or that Greek law provides an inadequate remedy. Consequently, we hold that the district court did not abuse its discretion in declining jurisdiction.

The judgment is affirmed.