In the Matter of the Complaint of UNTERWESER REEDEREI, GmBH.

ZAPATA OFF-SHORE COMPANY, Plaintiff-Appellee,

v.

M/S BREMEN and Unterweser Reederei, GmBH, Defendants-Appellants.

No. 27497.

United States Court of Appeals, Fifth Circuit.

June 28, 1971.

David C. G. Kerr, of MacFarlane, Ferguson, Allison & Kelly, Jack C. Rinard, Tampa, Fla., Warren M. Faris, of Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, J. Y. Gilmore, Jr., New Orleans, La., for appellants.

Dewey R. Villareal, Jr., of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., James K. Nance, of

Baker, Botts, Shepherd & Coates, Houston, Tex., for appellee.

## ON PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, WISDOM, GEWIN, BELL,* THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

### PER CURIAM:

Upon consideration of this cause en banc the Court adopts the majority opinion and judgment of the panel, 428 F.2d 888 (5th Cir. 1970).

WISDOM, Circuit Judge, dissenting, joined by Judges Thornberry, Goldberg, Godbold, Simpson and Clark:

Again I feel impelled to dissent in this case. It is incredible that a court should fail to honor an agreement between a foreign corporation and a domestic corporation to settle their contractual disputes in a neutral forum according to the law of a neutral country long used to its courts' settling admiralty disputes.

The issue as stated in the majority opinion is as follows:

The question we must decide is whether the district court was *obliged* to decline to exercise admitted jurisdiction under the facts of the admitted case. 428 F.2d 893 (Emphasis added.)

In support of its position, the Court quoted the following statement from Carbon Black Export, Inc. v. The S.S.

Monrosa, 5 Cir. 1958, 254 F.2d 297, 300, cert. dismissed, 1959, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723, rehearing denied 359 U.S. 999, 79 S.Ct. 1115, 3 L.Ed. 2d 986:

In essence, the motion [to decline jurisdiction] was based upon Clause 27 as buttressed by the doctrine of forum non conveniens. Any consideration of such a question starts with the universally accepted rule that agreements in advance of controversy whose object is to *oust the jurisdiction* of the courts are contrary to public policy and will not be enforced. (Emphasis added.)

The issue here is not whether the Court is "obliged" to decline to exercise jurisdiction. It is not whether parties can "oust the jurisdiction of the courts". In this case and similar cases the parties assume that the local court has jurisdiction but agree that in the absence of unreasonable circumstances the court should exercise its jurisdiction only to the extent of giving effect to the choice of forum clause just as courts give effect to any clause expressing the intention of the contracting parties. The issue is whether in the circumstances of this case it is unreasonable for the court to enforce the bargain struck on an international transaction by two companies of diverse nationalities well able to take care of themselves in negotiating a contract.

The contract was not between some indigent American seaman and Greek shipowner to try disputes in Piraeus, Greece.[1] It was not a towing contract

---

* Judge Bell did not participate in the consideration or decision of this case.

1. It has been noted that, "If *Zapata* postulates that forum clauses are against public policy, the Fifth Circuit's opinion in Anastasiadis v. S.S. Little John, 5 Cir. 1965, 346 F.2d 281, becomes very difficult to explain." Comment, 8 Houston L.Rev. 739, 743 (1971). In *Anastasiadis* a Greek seaman had contracted in Greece for employment on a vessel of Liberian registry. Although a Liberian corporation owned the vessel, that corporation was in turn wholly owned and controlled by an American corporation, in turn wholly owned and controlled by a United States citizen. The contract, written in Greek, provided that the seaman would join the vessel at Houston, Texas. But it stated that Greek law would govern disputes and designated the Greek courts at Pireaus as the forum. Although a nominal foreign registry is often pierced where American laws are to be enforced against a ship beneficially owned by Americans, this Court declined to do so. We said:

The contract in the instant case provided not only that Greek law would be determinative but also that the Greek

in inland American waterways with the towage company having superior bargaining leverage.[2] The contract in this case required the towage company to tow a six million dollar drilling rig from Venice, Louisiana, near the mouth of the Mississippi, through the Gulf of Mexico, across the Mediterranean, and up the Adriatic to Ravenna, Italy. Zapata, owner of the rig, solicited bids from several towing companies. The low bidder, Unterweser, a German company, generally inserts in its contract a provision for trial of disputes in German courts according to German law. The choice of forum provision was an essential element in the final contract, undoubtedly because of the validity of exculpatory clauses in English law and the possibility of the invalidity of exculpatory clauses in towage contracts in American law.[3]

The Court makes a half-hearted attempt to argue that it "was within the sound discretion of the district court to decline jurisdiction on the basis of forum non conveniens". This doctrine puts the burden on the party asserting it to justify its application. The forum non conveniens theory should have no bearing on this case—at least in terms of the burden of proof. Here the parties have agreed on the forum and the applicable law. In these circumstances Zapata, represented by experienced counsel, should not be allowed to welch on its bargain.

The contention that Unterweser should be treated as having assented to the jurisdiction of the local court by filing the limitation action is a red herring. In the first place, Unterweser (more accurately, the tug Bremen) left international waters to enter the district court's jurisdiction *upon the instructions of Zapata.* Conveniently, Zapata had a United States marshal waiting to arrest the Bremen when the tug entered Tampa Bay with the disabled Chaparral (the drilling rig). And when Unterweser proceeded to move the district court to dismiss the suit, the district court failed to rule on its motion *until after the statutory period for filing a limitation action had elapsed.* Unterweser had already sued in London for breach of contract. Prior to the limitation action, the High Court of Justice had ruled that Zapata had been properly served and that the action should proceed in the English courts.[4] Thus, the limitation action, filed one week before the expiration of the applicable statute of limitations, was a protective measure. When Zapata moved the district court to restrain further litigation in England, Unterweser moved to stay its own limitation proceeding until the English suit was determined. The majority admits that Unterweser invoked American jurisdiction only reluctantly. The district court may have had the *power* to order Unterweser to cease its English litigation. But *see* 39 U.Cin.L.Rev. 819 (1970).[5] The ques-

courts were to be the proper forum for the litigation of claims arising out of the contract. We see no reason, in the circumstances of this case, why this provision should not be given effect in the absence of any suggestion in the record that Greece is an inconvenient forum or that Greek law provides an inadequate remedy.

2. *See* Bisso v. Inland Waterways Corporation, 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911; Dixilyn Drilling Corporation v. Crescent Towing and Salvage Co., 1963, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78. In *Dixilyn* both parties were American and the tow was to be performed here. *Bisso* emphasized that the

exculpatory clause was produced by overweening bargaining power.

3. In Seaboard Coast Line Railroad Company v. Tennessee Corporation, 5 Cir. 1970, 421 F.2d 970, this Court enforced an exculpatory clause against a railroad.

4. Zapata appealed the ruling. After Unterweser had filed its limitation action in Tampa, the English Court of Appeal affirmed the High Court of Justice, holding that the forum clause was reasonable, and that Zapata had made no showing to justify the court's refusing to enforce the written agreement.

5. "Unterweser had moved for the district court to dismiss for lack of jurisdiction, but the court did not rule on the motion.

tion remains, however, even in terms of the majority's analysis, "whether the district court *properly* refused to stay the limitation proceeding." (Emphasis supplied.)

I close with a quotation from a law review comment, Application of the Forum Clause to Commercial Contracts, 8 Houston L.Rev. 739, 752 (1971), that appeared after the Court had held its en banc conference on this case:

## VII.  Summary

Forum clauses were once "taboo" in American courts.  Since 1949, however, courts have been more conciliatory toward these contractual provisions.  The "ouster" rationale—used in most pre-Krenger [6] decisions as a basis for rejecting forum clauses—has been discarded in large measure.  The "reasonableness" test, developed in Muller,[7] gives prima facie validity to forum clauses and places the onus on the plaintiff to show that the clause is unreasonable.  This test has been accepted by the latest revision of the *Restatement*, the majority of the courts which recently have considered forum clauses, and most of the legal scholars who have written on the problem.  Acceptance of the prima facie validity of forum clauses has these advantages:  (1) it vitiates the legal fiction of ouster;  (2) it reinforces the principle of party autonomy;  and (3) it gives discretion to the trial judge who may weigh all the equities.  Since the *Muller* test is basically one of discretion, there is always the danger of abuse, especially from jurists who wish to assure to parties who reside within their jurisdiction an open court.  On

As time passed and the deadline for filing a limitation action in the district court approached, the court still had not ruled on the motions to dismiss.  Unterweser was forced to choose one of two alternatives.  It could either do nothing and hope that the court would eventually dismiss for lack of jurisdiction, or it could file a limitation action to reduce its liability to the statutory amount—the value of the vessel plus freight revenue due.  Unterweser chose the latter alternative and the court held that filing a limitation action mooted the question of jurisdiction.  The court of appeals affirmed that holding.

This holding perverts the purpose of a limitation action which is intended to be a defense against multiple claims or a claim in excess of the shipowner's statutory liability and not a device whereby a court can obtain in personam jurisdiction.  * * *  Thus, in effect, the court forced Unterweser to file the limitation action and then found the filing of the action cured the question of lack of jurisdiction by holding that the filing mooted the question."  Note, 39 U.Cinn.L.Rev. 819 (1970).

6.  In 1949 Judge Learned Hand, in his concurring opinion in Krenger v. Pennsylvania Railroad Co., 2 Cir. 1949, 174 F.2d 556, cert. denied, 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531, stated:

[C]ourts have long looked with strong disfavor upon contracts by which a party surrenders resort to any forum which was lawfully open to him.  * *  In truth, I do not believe that, today at least, there is an absolute taboo against such contracts at all; in the words of the Restatement, they are invalid only when unreasonable.  * * *

7.  Muller & Company v. Swedish American Lines Ltd., 2 Cir. 1955, 224 F.2d 806, cert. denied, 1955, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793, held that courts should enforce a forum clause in an international contract unless it is unreasonable or prohibited by statute.  The court pointed out that the burden of proving that the clause is unreasonable, however, is on the plaintiffs, and since the plaintiff received contract consideration for the agreement to litigate all claims in the stipulated forum, "mere inconvenience or additional expense is not the test of unreasonableness.  * * *"  The plaintiff cannot prevail in derogation of the forum clause if the stipulated forum is available and can render "substantial justice" to him.

In the instant case, the majority stated that Indussa Corporation v. S.S. Ranborg, 2 Cir. 1967, 377 F.2d 200, overruled this part of *Muller*.  But *Indussa's* decision not to enforce a forum clause derived from its view that the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315, where applicable, prohibited such clauses.  COGSA did apply to *Muller* (as it did to Carbon Black) and for that reason *Muller* was overruled.

balance, however, the *Muller* test is sound, and it is difficult to imagine any court long rejecting a criterion which is universally referred to as the "reasonableness" test.

The decision of the majority is a backward step by a forward-looking court. It has no place in a shrinking world where international commercial transactions are becoming increasingly commonplace. The safeguard against abuse of the forum clause is the local court's power to determine the reasonableness of enforcing the clause. But the burden of proving unreasonableness should fall on the party seeking to escape from the obligation he contracted to undertake. Zapata has failed to show any good reason for backing out of its bargain.

SIMPSON, Circuit Judge (dissenting):

I respectfully dissent, for the reasons set forth in Judge Wisdom's dissent from the panel decision In Matter of Complaint of Unterweser Reederei, GmBH, Zapata Off-Shore Company v. M/S Bremen and Unterweser Reederei, GmBH, 5 Cir. 1970, 428 F.2d 888.