## CARNIVAL CRUISE LINES, INC. *v.* SHUTE ET VIR

No. 89–1647.   Argued January 15, 1991—Decided April 17, 1991

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. STEVENS, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 597.

*Richard K. Willard* argued the cause for petitioner. With him on the briefs were *David L. Roll* and *Lawrence D. Winson*.

*Gregory J. Wall* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging reversal were filed for the Chamber of Commerce of the United States by *Herbert L. Fenster*, *Stanley W. Land-*

JUSTICE BLACKMUN delivered the opinion of the Court.

In this admiralty case we primarily consider whether the United States Court of Appeals for the Ninth Circuit correctly refused to enforce a forum-selection clause contained in tickets issued by petitioner Carnival Cruise Lines, Inc., to respondents Eulala and Russel Shute.

I

The Shutes, through an Arlington, Wash., travel agent, purchased passage for a 7-day cruise on petitioner's ship, the *Tropicale*. Respondents paid the fare to the agent who forwarded the payment to petitioner's headquarters in Miami, Fla. Petitioner then prepared the tickets and sent them to respondents in the State of Washington. The face of each ticket, at its left-hand lower corner, contained this admonition:

"SUBJECT TO CONDITIONS OF
CONTRACT ON LAST PAGES
**IMPORTANT!** PLEASE READ CONTRACT
—ON LAST PAGES 1, 2, 3" App. 15.

The following appeared on "contract page 1" of each ticket:

*"TERMS AND CONDITIONS OF PASSAGE
CONTRACT TICKET*

.        .        .        .        .

"3. (a) The acceptance of this ticket by the person or persons named hereon as passengers shall be deemed to be an acceptance and agreement by each of them of all of the terms and conditions of this Passage Contract Ticket.

.        .        .        .        .

"8. It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract

---

*fair,* and *Robin S. Conrad;* and for the International Committee of Passenger Lines by *John A. Flynn* and *James B. Nebel.*

shall be litigated, if at all, in and before a Court located in the State of Florida, U. S. A., to the exclusion of the Courts of any other state or country." *Id.*, at 16.

The last quoted paragraph is the forum-selection clause at issue.

## II

Respondents boarded the *Tropicale* in Los Angeles, Cal. The ship sailed to Puerto Vallarta, Mexico, and then returned to Los Angeles. While the ship was in international waters off the Mexican coast, respondent Eulala Shute was injured when she slipped on a deck mat during a guided tour of the ship's galley. Respondents filed suit against petitioner in the United States District Court for the Western District of Washington, claiming that Mrs. Shute's injuries had been caused by the negligence of Carnival Cruise Lines and its employees. *Id.*, at 4.

Petitioner moved for summary judgment, contending that the forum clause in respondents' tickets required the Shutes to bring their suit against petitioner in a court in the State of Florida. Petitioner contended, alternatively, that the District Court lacked personal jurisdiction over petitioner because petitioner's contacts with the State of Washington were insubstantial. The District Court granted the motion, holding that petitioner's contacts with Washington were constitutionally insufficient to support the exercise of personal jurisdiction. See App. to Pet. for Cert. 60a.

The Court of Appeals reversed. Reasoning that "but for" petitioner's solicitation of business in Washington, respondents would not have taken the cruise and Mrs. Shute would not have been injured, the court concluded that petitioner had sufficient contacts with Washington to justify the District Court's exercise of personal jurisdiction. 897 F. 2d 377, 385–386 (CA9 1990).*

---

*The Court of Appeals had filed an earlier opinion also reversing the District Court and ruling that the District Court had personal jurisdic-

Turning to the forum-selection clause, the Court of Appeals acknowledged that a court concerned with the enforceability of such a clause must begin its analysis with *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1 (1972), where this Court held that forum-selection clauses, although not "historically . . . favored," are "prima facie valid." *Id.*, at 9–10. See 897 F. 2d, at 388. The appellate court concluded that the forum clause should not be enforced because it "was not freely bargained for." *Id.*, at 389. As an "independent justification" for refusing to enforce the clause, the Court of Appeals noted that there was evidence in the record to indicate that "the Shutes are physically and financially incapable of pursuing this litigation in Florida" and that the enforcement of the clause would operate to deprive them of their day in court and thereby contravene this Court's holding in *The Bremen*. 897 F. 2d, at 389.

We granted certiorari to address the question whether the Court of Appeals was correct in holding that the District Court should hear respondents' tort claim against petitioner. 498 U. S. 807–808 (1990). Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction. See *Ashwander* v. *TVA*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring) ("'It is not the habit of the Court to decide questions of a constitutional nature un-

---

tion over the cruise line and that the forum-selection clause in the tickets was unreasonable and was not to be enforced. 863 F. 2d 1437 (CA9 1988). That opinion, however, was withdrawn when the court certified to the Supreme Court of Washington the question whether the Washington long-arm statute, Wash. Rev. Code § 4.28.185 (1988), conferred personal jurisdiction over Carnival Cruise Lines for the claim asserted by the Shutes. See 872 F. 2d 930 (1989). The Washington Supreme Court answered the certified question in the affirmative on the ground that the Shutes' claim "arose from" petitioner's advertisement in Washington and the promotion of its cruises there. 113 Wash. 2d 763, 783 P. 2d 78 (1989). The Court of Appeals then "refiled" its opinion "as modified herein." See 897 F. 2d, at 380, n. 1.

less absolutely necessary to a decision of the case,'" quoting *Burton* v. *United States*, 196 U. S. 283, 295 (1905)).

## III

We begin by noting the boundaries of our inquiry. First, this is a case in admiralty, and federal law governs the enforceability of the forum-selection clause we scrutinize. See *Archawski* v. *Hanioti*, 350 U. S. 532, 533 (1956); *The Moses Taylor*, 4 Wall. 411, 427 (1867); Tr. of Oral Arg. 36–37, 12, 47–48. Cf. *Stewart Organization, Inc.* v. *Ricoh Corp.*, 487 U. S. 22, 28–29 (1988). Second, we do not address the question whether respondents had sufficient notice of the forum clause before entering the contract for passage. Respondents essentially have conceded that they had notice of the forum-selection provision. Brief for Respondents 26 ("The respondents do not contest the incorporation of the provisions nor *[sic]* that the forum selection clause was reasonably communicated to the respondents, as much as three pages of fine print can be communicated"). Additionally, the Court of Appeals evaluated the enforceability of the forum clause under the assumption, although "doubtful," that respondents could be deemed to have had knowledge of the clause. See 897 F. 2d, at 389, and n. 11.

Within this context, respondents urge that the forum clause should not be enforced because, contrary to this Court's teachings in *The Bremen*, the clause was not the product of negotiation, and enforcement effectively would deprive respondents of their day in court. Additionally, respondents contend that the clause violates the Limitation of Vessel Owner's Liability Act, 46 U. S. C. App. § 183c. We consider these arguments in turn.

## IV

### A

Both petitioner and respondents argue vigorously that the Court's opinion in *The Bremen* governs this case, and each side purports to find ample support for its position in that

opinion's broad-ranging language. This seeming paradox derives in large part from key factual differences between this case and *The Bremen*, differences that preclude an automatic and simple application of *The Bremen*'s general principles to the facts here.

In *The Bremen*, this Court addressed the enforceability of a forum-selection clause in a contract between two business corporations. An American corporation, Zapata, made a contract with Unterweser, a German corporation, for the towage of Zapata's oceangoing drilling rig from Louisiana to a point in the Adriatic Sea off the coast of Italy. The agreement provided that any dispute arising under the contract was to be resolved in the London Court of Justice. After a storm in the Gulf of Mexico seriously damaged the rig, Zapata ordered Unterweser's ship to tow the rig to Tampa, Fla., the nearest point of refuge. Thereafter, Zapata sued Unterweser in admiralty in federal court at Tampa. Citing the forum clause, Unterweser moved to dismiss. The District Court denied Unterweser's motion, and the Court of Appeals for the Fifth Circuit, sitting en banc on rehearing, and by a sharply divided vote, affirmed. *In re Complaint of Unterweser Reederei, GmBH*, 446 F. 2d 907 (1971).

This Court vacated and remanded, stating that, in general, "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." 407 U. S., at 12–13 (footnote omitted). The Court further generalized that "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." *Id.*, at 15. The Court did not define precisely the circumstances that would make it unreasonable for a court to enforce a forum clause. Instead, the Court discussed a number of factors that made it reasonable to enforce the clause at issue in *The Bremen* and

that, presumably, would be pertinent in any determination whether to enforce a similar clause.

In this respect, the Court noted that there was "strong evidence that the forum clause was a vital part of the agreement, and [that] it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations." *Id.*, at 14 (footnote omitted). Further, the Court observed that it was not "dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum," and that in such a case, "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." *Id.*, at 17. The Court stated that even where the forum clause establishes a remote forum for resolution of conflicts, "the party claiming [unfairness] should bear a heavy burden of proof." *Ibid.*

In applying *The Bremen*, the Court of Appeals in the present litigation took note of the foregoing "reasonableness" factors and rather automatically decided that the forum-selection clause was unenforceable because, unlike the parties in *The Bremen*, respondents are not business persons and did not negotiate the terms of the clause with petitioner. Alternatively, the Court of Appeals ruled that the clause should not be enforced because enforcement effectively would deprive respondents of an opportunity to litigate their claim against petitioner.

*The Bremen* concerned a "far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea." *Id.*, at 13. These facts suggest that, even apart from the evidence of negotiation regarding the forum clause, it was entirely reasonable for the Court in *The*

*Bremen* to have expected Unterweser and Zapata to have negotiated with care in selecting a forum for the resolution of disputes arising from their special towing contract.

In contrast, respondents' passage contract was purely routine and doubtless nearly identical to every commercial passage contract issued by petitioner and most other cruise lines. See, *e. g.*, *Hodes* v. *S. N. C. Achille Lauro ed Altri-Gestione*, 858 F. 2d 905, 910 (CA3 1988), cert. dism'd, 490 U. S. 1001 (1989). In this context, it would be entirely unreasonable for us to assume that respondents—or any other cruise passenger—would negotiate with petitioner the terms of a forum-selection clause in an ordinary commercial cruise ticket. Common sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line. But by ignoring the crucial differences in the business contexts in which the respective contracts were executed, the Court of Appeals' analysis seems to us to have distorted somewhat this Court's holding in *The Bremen*.

In evaluating the reasonableness of the forum clause at issue in this case, we must refine the analysis of *The Bremen* to account for the realities of form passage contracts. As an initial matter, we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining. Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. See *The Bremen*, 407 U. S., at 13, and n. 15; *Hodes*, 858 F. 2d, at 913. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary

effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. See *Stewart Organization*, 487 U. S., at 33 (concurring opinion). Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued. Cf. *Northwestern Nat. Ins. Co.* v. *Donovan*, 916 F. 2d 372, 378 (CA7 1990).

We also do not accept the Court of Appeals' "independent justification" for its conclusion that *The Bremen* dictates that the clause should not be enforced because "[t]here is evidence in the record to indicate that the Shutes are physically and financially incapable of pursuing this litigation in Florida." 897 F. 2d, at 389. We do not defer to the Court of Appeals' findings of fact. In dismissing the case for lack of personal jurisdiction over petitioner, the District Court made no finding regarding the physical and financial impediments to the Shutes' pursuing their case in Florida. The Court of Appeals' conclusory reference to the record provides no basis for this Court to validate the finding of inconvenience. Furthermore, the Court of Appeals did not place in proper context this Court's statement in *The Bremen* that "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." 407 U. S., at 17. The Court made this statement in evaluating a hypothetical "agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *Ibid.* In the present case, Florida is not a "remote alien forum," nor—given the fact that Mrs. Shute's accident occurred off the coast of Mexico— is this dispute an essentially local one inherently more suited to resolution in the State of Washington than in Florida. In

light of these distinctions, and because respondents do not claim lack of notice of the forum clause, we conclude that they have not satisfied the "heavy burden of proof," *ibid.*, required to set aside the clause on grounds of inconvenience.

It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness. In this case, there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims. Any suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports. Similarly, there is no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity. In the case before us, therefore, we conclude that the Court of Appeals erred in refusing to enforce the forum-selection clause.

B

Respondents also contend that the forum-selection clause at issue violates 46 U. S. C. App. § 183c. That statute, enacted in 1936, see ch. 521, 49 Stat. 1480, provides:

"It shall be unlawful for the . . . owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner . . . from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent

jurisdiction on the question of liability for such loss or injury, or the measure of damages therefor. All such provisions or limitations contained in any such rule, regulation, contract, or agreement are hereby declared to be against public policy and shall be null and void and of no effect."

By its plain language, the forum-selection clause before us does not take away respondents' right to "a trial by [a] court of competent jurisdiction" and thereby contravene the explicit proscription of § 183c. Instead, the clause states specifically that actions arising out of the passage contract shall be brought "if at all," in a court "located in the State of Florida," which, plainly, is a "court of competent jurisdiction" within the meaning of the statute.

Respondents appear to acknowledge this by asserting that although the forum clause does not directly prevent the determination of claims against the cruise line, it causes plaintiffs unreasonable hardship in asserting their rights and therefore violates Congress' intended goal in enacting § 183c. Significantly, however, respondents cite no authority for their contention that Congress' intent in enacting § 183c was to avoid having a plaintiff travel to a distant forum in order to litigate. The legislative history of § 183c suggests instead that this provision was enacted in response to passenger-ticket conditions purporting to limit the shipowner's liability for negligence or to remove the issue of liability from the scrutiny of any court by means of a clause providing that "the question of liability and the measure of damages shall be determined by arbitration." See S. Rep. No. 2061, 74th Cong., 2d Sess., 6 (1936); H. R. Rep. No. 2517, 74th Cong., 2d Sess., 6 (1936). See also Safety of Life and Property at Sea: Hearings before the House Committee on Merchant Marine and Fisheries, 74th Cong., 2d Sess., pt. 4, pp. 20, 36–37, 57, 109–110, 119 (1936). There was no prohibition of a forum-selection clause. Because the clause before us allows for judicial resolution of claims against petitioner and does

not purport to limit petitioner's liability for negligence, it does not violate § 183c.

V

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, dissenting.

The Court prefaces its legal analysis with a factual statement that implies that a purchaser of a Carnival Cruise Lines passenger ticket is fully and fairly notified about the existence of the choice of forum clause in the fine print on the back of the ticket. See *ante*, at 587–588. Even if this implication were accurate, I would disagree with the Court's analysis. But, given the Court's preface, I begin my dissent by noting that only the most meticulous passenger is likely to become aware of the forum-selection provision. I have therefore appended to this opinion a facsimile of the relevant text, using the type size that actually appears in the ticket itself. A careful reader will find the forum-selection clause in the 8th of the 25 numbered paragraphs.

Of course, many passengers, like the respondents in this case, see *ante*, at 587, will not have an opportunity to read paragraph 8 until they have actually purchased their tickets. By this point, the passengers will already have accepted the condition set forth in paragraph 16(a), which provides that "[t]he Carrier shall not be liable to make any refund to passengers in respect of . . . tickets wholly or partly not used by a passenger." Not knowing whether or not that provision is legally enforceable, I assume that the average passenger would accept the risk of having to file suit in Florida in the event of an injury, rather than canceling—without a refund— a planned vacation at the last minute. The fact that the cruise line can reduce its litigation costs, and therefore its liability insurance premiums, by forcing this choice on its passengers does not, in my opinion, suffice to render the

provision reasonable. Cf. *Steven* v. *Fidelity & Casualty Co. of New York*, 58 Cal. 2d 862, 883, 377 P. 2d 284, 298 (1962) (refusing to enforce limitation on liability in insurance policy because insured "must purchase the policy before he even knows its provisions").

Even if passengers received prominent notice of the forum-selection clause before they committed the cost of the cruise, I would remain persuaded that the clause was unenforceable under traditional principles of federal admiralty law and is "null and void" under the terms of Limitation of Vessel Owner's Liability Act, ch. 521, 49 Stat. 1480, 46 U. S. C. App. § 183c, which was enacted in 1936 to invalidate expressly stipulations limiting shipowners' liability for negligence.

Exculpatory clauses in passenger tickets have been around for a long time. These clauses are typically the product of disparate bargaining power between the carrier and the passenger, and they undermine the strong public interest in deterring negligent conduct. For these reasons, courts long before the turn of the century consistently held such clauses unenforceable under federal admiralty law. Thus, in a case involving a ticket provision purporting to limit the shipowner's liability for the negligent handling of baggage, this Court wrote:

> "It is settled in the courts of the United States that exemptions limiting carriers from responsibility for the negligence of themselves or their servants are both unjust and unreasonable, and will be deemed as wanting in the element of voluntary assent; and, besides, that such conditions are in conflict with public policy. This doctrine was announced so long ago, and has been so frequently reiterated, that it is elementary. We content ourselves with referring to the cases of the *Baltimore & Ohio &c. Railway* v. *Voigt*, 176 U. S. 498, 505, 507, and *Knott* v. *Botany Mills*, 179 U. S. 69, 71, where the previously adjudged cases are referred to and the principles

by them expounded are restated." *The Kensington*, 183 U. S. 263, 268 (1902).

Clauses limiting a carrier's liability or weakening the passenger's right to recover for the negligence of the carrier's employees come in a variety of forms. Complete exemptions from liability for negligence or limitations on the amount of the potential damage recovery,[1] requirements that notice of claims be filed within an unreasonably short period of time,[2] provisions mandating a choice of law that is favorable to the defendant in negligence cases,[3] and forum-selection clauses are all similarly designed to put a thumb on the carrier's side of the scale of justice.[4]

---

[1] See 46 U. S. C. App. § 183c:

"It shall be unlawful for the . . . owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner . . . from liability, or from liability beyond any stipulated amount, for such loss or injury . . . ."

[2] See 46 U. S. C. App. § 183b(a):

"It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."

See also 49 U. S. C. § 11707(e) ("A carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section").

[3] See, *e. g.*, *The Kensington*, 183 U. S. 263, 269 (1902) (refusing to enforce clause requiring that all disputes under contract for passage be governed by Belgian law because such law would have favored the shipowner in violation of United States public policy).

[4] All these clauses will provide passengers who purchase tickets containing them with a "benefit in the form of reduced fares reflecting the sav-

Forum-selection clauses in passenger tickets involve the intersection of two strands of traditional contract law that qualify the general rule that courts will enforce the terms of a contract as written. Pursuant to the first strand, courts traditionally have reviewed with heightened scrutiny the terms of contracts of adhesion, form contracts offered on a take-or-leave basis by a party with stronger bargaining power to a party with weaker power. Some commentators have questioned whether contracts of adhesion can justifiably be enforced at all under traditional contract theory because the adhering party generally enters into them without manifesting knowing and voluntary consent to all their terms. See, e. g., Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L. Rev. 1173, 1179–1180 (1983); Slawson, Mass Contracts: Lawful Fraud in California, 48 S. Cal. L. Rev. 1, 12–13 (1974); K. Llewellyn, The Common Law Tradition 370–371 (1960).

The common law, recognizing that standardized form contracts account for a significant portion of all commercial agreements, has taken a less extreme position and instead subjects terms in contracts of adhesion to scrutiny for reasonableness. Judge J. Skelly Wright set out the state of the law succinctly in *Williams* v. *Walker-Thomas Furniture Co.*, 121 U. S. App. D. C. 315, 319–320, 350 F. 2d 445, 449–450 (1965) (footnotes omitted):

> "Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his

---

ings that the cruise line enjoys by limiting [its exposure to liability]." See *ante*, at 594. Under the Court's reasoning, all these clauses, including a complete waiver of liability, would be enforceable, a result at odds with longstanding jurisprudence.

consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

See also *Steven*, 58 Cal. 2d, at 879–883, 377 P. 2d, at 295–297; *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69 (1960).

The second doctrinal principle implicated by forum-selection clauses is the traditional rule that "contractual provisions, which seek to limit the place or court in which an action may . . . be brought, are invalid as contrary to public policy." See Dougherty, Validity of Contractual Provision Limiting Place or Court in Which Action May Be Brought, 31 A. L. R. 4th 404, 409, § 3 (1984). See also *Home Insurance Co.* v. *Morse*, 20 Wall. 445, 451 (1874). Although adherence to this general rule has declined in recent years, particularly following our decision in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1 (1972), the prevailing rule is still that forum-selection clauses are not enforceable if they were not freely bargained for, create additional expense for one party, or deny one party a remedy. See 31 A. L. R. 4th, at 409–438 (citing cases). A forum-selection clause in a standardized passenger ticket would clearly have been unenforceable under the common law before our decision in *The Bremen*, see 407 U. S., at 9, and n. 10, and, in my opinion, remains unenforceable under the prevailing rule today.

*The Bremen*, which the Court effectively treats as controlling this case, had nothing to say about stipulations printed on the back of passenger tickets. That case involved the enforceability of a forum-selection clause in a freely negotiated international agreement between two large corporations providing for the towage of a vessel from the Gulf of Mexico to the Adriatic Sea. The Court recognized that such towage agreements had generally been held unenforceable in Ameri-

can courts,[5] but held that the doctrine of those cases did not extend to commercial arrangements between parties with equal bargaining power.

The federal statute that should control the disposition of the case before us today was enacted in 1936 when the general rule denying enforcement of forum-selection clauses was indisputably widely accepted. The principal subject of the statute concerned the limitation of shipowner liability, but as the following excerpt from the House Report explains, the section that is relevant to this case was added as a direct response to shipowners' ticketing practices.

> "During the course of the hearings on the bill (H. R. 9969) there was also brought to the attention of the committee a practice of providing on the reverse side of steamship tickets that in the event of damage or injury caused by the negligence or fault of the owner or his servants, the liability of the owner shall be limited to a stipulated amount, in some cases $5,000, and in others substantially lower amounts, or that in such event the question of liability and the measure of damages *shall be determined by arbitration.* The amendment to chapter 6 of title 48 of the Revised Statutes proposed to be made by section 2 of the committee amendment is intended to, and in the opinion of the committee will, *put a stop to all such practices and practices of a like character.*" H. R. Rep. No. 2517, 74th Cong., 2d Sess., 6–7 (1936) (emphasis added); see also S. Rep. No. 2061, 74th Cong., 2d Sess., 6–7 (1936).

---

[5] "In [*Carbon Black Export, Inc.* v. *The Monrosa,* 254 F. 2d 297 (CA5 1958), cert. dism'd, 359 U. S. 180 (1959),] the Court of Appeals had held a forum-selection clause unenforceable, reiterating the traditional view of many American courts that 'agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced.' 254 F. 2d, at 300–301." *The Bremen* v. *Zapata Off-Shore Co.,* 407 U. S. 1, 6 (1972).

The intent to "put a stop to all such practices and practices of a like character" was effectuated in the second clause of the statute. It reads:

> "It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) *purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury, or the measure of damages therefor.* All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect." 46 U. S. C. App. § 183c (emphasis added).

The stipulation in the ticket that Carnival Cruise sold to respondents certainly lessens or weakens their ability to recover for the slip and fall incident that occurred off the west coast of Mexico during the cruise that originated and terminated in Los Angeles, California. It is safe to assume that the witnesses — whether other passengers or members of the crew — can be assembled with less expense and inconvenience at a west coast forum than in a Florida court several thousand miles from the scene of the accident.

A liberal reading of the 1936 statute is supported by both its remedial purpose and by the legislative history's general condemnation of "all such practices." Although the statute does not specifically mention forum-selection clauses, its language is broad enough to encompass them. The absence of a

specific reference is adequately explained by the fact that such clauses were already unenforceable under common law and would not often have been used by carriers, which were relying on stipulations that purported to exonerate them from liability entirely. Cf. *Moskal* v. *United States,* 498 U. S. 103, 110–113 (1990).

The Courts of Appeals, construing an analogous provision of the Carriage of Goods by Sea Act, 46 U. S. C. App. § 1300 *et seq.,* have unanimously held invalid as limitations on liability forum-selection clauses requiring suit in foreign jurisdictions. See, *e. g., Hughes Drilling Fluids* v. *M/V Luo Fu Shan,* 852 F. 2d 840 (CA5 1988), cert. denied, 489 U. S. 1033 (1989); *Union Ins. Soc. of Canton, Ltd.* v. *S. S. Elikon,* 642 F. 2d 721, 724–725 (CA4 1981); *Indussa Corp.* v. *S. S. Ranborg,* 377 F. 2d 200, 203–204 (CA2 1967). Commentators have also endorsed this view. See, *e. g.,* G. Gilmore & C. Black, The Law of Admiralty 145, and n. 23 (2d ed. 1975); Mendelsohn, Liberalism, Choice of Forum Clauses and the Hague Rules, 2 J. of Maritime Law & Comm. 661, 663–666 (1971). The forum-selection clause here does not mandate suit in a foreign jurisdiction, and therefore arguably might have less of an impact on a plaintiff's ability to recover. See *Fireman's Fund American Ins. Cos.* v. *Puerto Rican Forwarding Co.,* 492 F. 2d 1294 (CA1 1974). However, the plaintiffs in this case are not large corporations but individuals, and the added burden on them of conducting a trial at the opposite end of the country is likely proportional to the additional cost to a large corporation of conducting a trial overseas.[6]

Under these circumstances, the general prohibition against stipulations purporting "to lessen, weaken, or avoid" the passenger's right to a trial certainly should be construed to apply to the manifestly unreasonable stipulation in these passen-

---

[6] The Court does not make clear whether the result in this case would also apply if the clause required Carnival passengers to sue in Panama, the country in which Carnival is incorporated.

gers' tickets. Even without the benefit of the statute, I would continue to apply the general rule that prevailed prior to our decision in *The Bremen* to forum-selection clauses in passenger tickets.

I respectfully dissent.