**PEARCY MARINE, INC., Plaintiff,**

v.

**SEACOR MARINE, INC. and Glen H. Fornell, Defendants.**

Civ. A. No. G–93–124.

United States District Court,
S.D. Texas,
Galveston Division.

June 28, 1993.

Robert A. Sherman, Morris & Campbell, Houston, TX, for plaintiff.

Timothy Johnson, Morton Lee Susman, Weil, Gotshal & Manges, Steven Richard Selsberg, Weil, Gotshal & Manges, Houston, TX, for Seacor Marine Inc., Glen H. Fornell, defendants.

### ORDER

KENT, District Judge.

Before the Court is the Defendants' Motion to Dismiss. For the reasons set forth below, the Court DENIES this motion.

In early 1992, the Plaintiff, a Colorado corporation based in Galveston County, Texas, suffered cash flow problems that seriously affected the continued viability of its maritime transportation operations. Despite these problems, the Plaintiff possessed lucrative bookings with the United States military to tow two barges to the Pacific Rim. Unfortunately, the Plaintiff's cash problems forced it to file a voluntary Chapter 11 proceeding on February 21, 1992, before it could complete these bookings.

Subsequent to the initiation of the bankruptcy proceedings, Defendant Glen H. Seacor, a representative of Defendant Seacor Marine, Inc. ("Seacor"), began discussions with Plaintiff's management concerning the Plaintiff's operations and problems. During the course of these discussions, the Plaintiff permitted the Defendants to conduct an extensive review of the Plaintiff's books and records. After this review, the Defendants indicated that it did not think that the Plaintiff's business would survive and proposed an arrangement in which Seacor would assume the Plaintiff's business. When the Plaintiff turned down this arrangement, the Defendants made a counterproposal to provide the vessel M/V Seacor Star to the Plaintiff so that it could fulfill its obligations to the United States military. The Plaintiff agreed to this counterproposal, and the parties executed a charter agreement on March 17, 1992. On March 26, the Seacor Star set sail from Galveston Bay to Oakland Bay where the Plaintiff's barges were located. However, for reasons that are not entirely clear to the Court, upon arrival in Oakland Bay, the Seacor Star did not embark for the Pacific Rim, but instead returned to Galveston Bay.

In wake of the collapse of the charter agreement, the Plaintiff filed the instant suit. The Plaintiff alleges that the Defendants' failure to perform under the contract constitutes fraud, violation of the Texas Deceptive Trade Practices and Consumer Protection Act, breach of contract, breach of the duty of good faith and fair dealing, and negligence. The Defendants have responded by filing the Motion to Dismiss presently before the Court. The Defendants ask the Court to dismiss this action because the charter

agreement contains a choice of forum provision that mandates that all disputes between the parties be resolved in the High Court of Justice in London according to English law.[1] The Defendants claim that this provision is mandatory and exclusive, foreclosing this Court as a forum in which the Plaintiff may pursue its claims.

There is strong case law supporting this assertion. In the seminal case, *M/S Bremen v. Zapata Off-shore Co.*,[2] an American corporation sued a German corporation in the United States District Court for the Middle District of Florida. The American corporation claimed that the German corporation negligently performed and breached the terms of a towing contract. However, the German corporation claimed that the suit was not properly maintainable in the Florida forum because the towing contract contained a choice of forum clause specifying the London Court of Justice as the exclusive forum. The Supreme Court agreed. The Court held that forum selection clauses are prima facie valid, reasoning:

> Plainly, the Courts of England meet the standards of neutrality and long experience in admiralty litigation. The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason, it should be honored by the parties and enforced by the courts.

407 U.S. at 12, 92 S.Ct. at 1914.

The contract in the instant case was likewise the product of substantial and involved negotiations between two businesses with vast experience in the maritime arena. Clearly then, it appears that the Court must accord the choice of forum clause a great deal of deference. Indeed, the Plaintiff has a heavy burden to show why the Court should not give full effect to the clause.

Nevertheless, the Supreme Court did contemplate that there would be situations where "compelling and countervailing reasons" would require a court to disregard a choice of forum clause. Specifically, the Court stated that the choice of forum clause in *Bremen* should have been enforced "unless [the American corporation] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. The Court also stated: "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* Thus, the Court must determine whether the enforcement of the choice of forum clause would be unreasonable or unjust, whether the clause is invalid for fraud or overreaching, or whether the clause is contrary to public policy.

The Court first examines whether the choice of forum clause is invalid for fraud or overreaching. The Defendants are correct in pointing out that a general allegation of fraud is not sufficient to invalidate a choice of forum clause. *See Carnival Cruise Lines v. Shute,* 499 U.S. 585, 594, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974); *Moses v. Business Card Exp., Inc.,* 929 F.2d 1131 (6th Cir.1991). However, while the Plaintiff's complaint does contain a general allegation of fraud, the Defendants miss the subtlety of the Plaintiff's allegations in relation to choice of forum clause. The Plaintiff not only alleges that the Defendants fraudulently induced the contract and then refused to perform, but also that the Defendants fraudulently induced the Plaintiff to agree to

---

1. Specifically, section 25 of the charter agreement provides:

   This Agreement shall be construed in accordance with and governed by English law. Any dispute or difference which may arise out of or in connection with this Agreement or the services to be performed hereunder shall be referred to the High Court of Justice in London. No suit shall be brought in any other state or jurisdiction except that either party shall have the option to bring proceedings in rem to obtain conservative seizure or other similar remedy against any vessel or property owned by the other party in any state or any jurisdiction where such vessel or property may be found.

2. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

the High Court of Justice as the exclusive forum. The Plaintiff alleges that most maritime towing agreements between American shippers contain American choice of forum clauses and, indeed, that the three previous international charters between the parties stipulated an American forum. Nevertheless, the Defendants, after conducting an exhaustive and intimate study of the Plaintiff's books, records, and operations, for some reason elected to inject an English choice of forum clause into the instant contract. Furthermore, when the Plaintiff objected to this clause, the Defendants gave oral assurances of their intent to perform, essentially telling the Plaintiff not to worry about it. In the Court's mind these circumstances constitute, if not fraud, then certainly overreaching. The Plaintiff, strapped for cash, its deadline for fulfilling its obligations to the U.S. Military rapidly approaching, and possessing few or no alternatives to the instant contract to fulfill those obligations, had no choice but to accede to the English forum.[3]

Even if the choice of forum clause was put into the agreement in less suspicious circumstances, the Court still would not implement it. Enforcing this provision would be unjust and unreasonable to the Plaintiff. Consider the facts of this case: a company based in Galveston County sues a company based in Morgan City, Louisiana, over a charter agreement, negotiated at the two companies' places of business, that sent an American ship from Galveston Bay to Oakland Bay. Yet, the Defendants wish to litigate this dispute in a forum over six thousand miles away where none of the witnesses, documents, or anything else relevant to the case are located.

In *Bremen*, the Court suspected that the scenario under which a Court should disregard a choice of forum clause would be similar to the circumstances of the instant case. Indeed, in reference to the facts underlying *Bremen*, the Court stated: "We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *Id.*, 407 U.S. at 17, 92 S.Ct. at 1917. In the instant case, we *are* dealing with two American companies, a local dispute, and a choice of forum clause pointing to a far away locale. As the Supreme Court stated: "In such a case, the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." *Id.*

If the Court were to enforce the forum selection clause, the Plaintiff would not only be seriously inconvenienced but might be totally precluded from pursuing its claims. The Plaintiff's bankruptcy has left it totally bereft of the enormous funds necessary to pursue an action in England. In fact, the Plaintiff is only able to pursue the present action by means of a contingent fee relationship with its attorneys. Apparently, contingent fee relationships are illegal in England. Note, *Foreign Plaintiffs and Forum Non Conveniens: Going Beyond Reyno*, 64 Texas L.Rev. 193, 197 (1985). Consequently, there is a significant possibility that the enforcement of the forum selection clause would deprive the Plaintiff of any opportunity to pursue its claims.

Therefore, in light of the foregoing considerations, the Court concludes that the choice of forum clause is invalid for fraud and overreaching and that its enforcement would be unreasonable and unjust. Thus, the Court DENIES the Defendants' Motion to Dismiss. The Court strongly suggests that the parties refrain from any further procedural machinations and concentrate on the substantive resolution of this case.

IT IS SO ORDERED.

---

3. Additionally, in *Bremen,* the Supreme Court suggested that "[t]he remoteness of the forum might suggest that the agreement was an adhesive one." 407 U.S. at 17, 92 S.Ct. at 1917.