**CAMBRIDGE NUTRITION A.G. and Cambridge Nutrition International, B.V., Plaintiffs,**

v.

**Bill FOTHERINGHAM, Defendant.**

**No. 93 Civ. 3242 (MEL).**

United States District Court, S.D. New York.

Jan. 10, 1994.

David S. Fishman, Fishman, Dionne & Cantor, Windsor, CT, for plaintiffs; Janet B. Linn, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, of Counsel.

Lane & Mittendorf, New York City, for defendant; Alan R. Wentzel, of counsel.

LASKER, District Judge.

In an action for breach of contract, breach of trust and unfair competition, defendant moves to dismiss the complaint pursuant to the doctrine of *forum non conveniens* or, in the alternative, on the grounds that the exercise of jurisdiction in this case would exceed the limits of due process.

### I.

Plaintiffs Cambridge Nutrition A.G. ("CNAG")[1], a Swiss corporation, and Cambridge Nutrition International, B.V. ("CNI"), a Netherlands corporation, manufacture and sell a dietary formulation known as the "Cambridge Diet."

Defendant Bill Fotheringham, a permanent resident of Spain since 1968, was a former employee and shareholder of CNAG. Fotheringham also served as the sole administrator of CNAG's Spanish subsidiary, C.P. Iberica, S.A. ("Iberica").

In July 1986, the shareholders of CNAG entered into an agreement ("Agreement") to sell all of the company's shares to CNI. The aggregate purchase price paid by CNI to the shareholders was $1.24 million. In Section 7 of the Agreement, CNAG shareholders, officers and employees covenant that they will not compete with the Cambridge Diet or use the Cambridge trademarks or tradenames in the manufacture and sale of dietary formulas.

As consideration for the promise not to compete, the shareholders received $10,000, of which Fotheringham's share was $900.

After the Agreement was executed in a closing held in New York, Fotheringham continued to serve as Iberica's sole administrator. Iberica had an exclusive distribution agreement with Cambridge Plan, S.A. ("CP–Spain"), an independent Spanish company, to distribute Cambridge products in Spain. Fotheringham oversaw Iberica's distribution arrangement with CP–Spain and his actions in this regard are the heart of this dispute. Plaintiffs allege that Fotheringham owned shares of stock in CP–Spain and made business decisions favorable to CP–Spain and beneficial to himself, to the detriment of CNAG. The acts complained of include pricing the formula to favor CP–Spain and inducing CP–Spain to register certain Cambridge trademarks.

Plaintiffs now sue for breach of the covenant not to compete, breach of trust and unfair competition. Plaintiffs commenced suit in this court because Section 15 of the Agreement states:

> "This Agreement shall be governed by the laws of the State of New York, U.S.A. All parties hereby submit to the jurisdiction of the courts of the state of New York in regard to any claim, dispute or controversy relating to this Agreement, and all parties agree to accept service of process by mail."

### II.

Fotheringham moves to dismiss on *forum non conveniens* grounds. Plaintiffs argue that Fotheringham is precluded from litigating this dispute elsewhere by the forum-selection clause in the Agreement. Accordingly, the threshold question on this motion is whether Fotheringham is bound by the forum-selection clause to litigate the case in New York.

*Federal law*

■ The Supreme Court has held that, in general, "a freely negotiated private international agreement, unaffected by fraud, undue

---

**1.** CNAG was formerly known as Cambridge Plan, A.G. ("CPAG"). CPAG was a closely-held corporation.

influence, or overweening bargaining power ... should be given full effect." *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). In enforcing a forum-selection clause in *The Bremen,* the Court recognized that "[t]he elimination of all ... uncertainties by agreeing in advance on a forum acceptable to [all] parties is an indispensable element in international trade, commerce and contracting." *Id.* at 13–14, 92 S.Ct. at 1915. The Court imposed on the movant a heavy burden of showing that enforcement would be "unreasonable and unjust" or that the clause was the product of "fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1915.

Although Fotheringham states that he was not aware of the terms of the Agreement, he had delegated power of attorney to the CNAG legal counsel. In addition, the forum-selection clause at issue—Section 15 of the Agreement—was a negotiated term and was not hidden or buried in fine print.

In the recent case of *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court emphatically reinforced its decision in *The Bremen* and held that forum-selection clauses are enforceable even in a case involving parties with unequal bargaining power. In *Carnival Cruise Lines,* the Court held valid a choice of forum clause contained only in the form ticket contract issued to cruise ship passengers.

Fotheringham cites inconvenience, his ill health and the availability of Spain as an alternate forum as the grounds for defeating the forum-selection clause. However, in *The Bremen,* the Supreme Court held that a party seeking to escape the contract must show that trial in the designated forum "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 407 U.S. at 18, 92 S.Ct. at 1917. Fotheringham has not met this burden.

Fotheringham distinguishes *The Bremen* and *Carnival Cruise* from the case at hand on the grounds that, according to Fotheringham, the Supreme Court decisions involved "mandatory" rather than "permissive" forum clauses; that is, *The Bremen* and *Carnival Cruise* clauses used the words "must" or "shall" rather than the words "hereby submit" in the present case. Fotheringham relies on *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir.1974), for the proposition that the holding in *The Bremen* is limited to so-called "mandatory" forum clauses.

The argument is unpersuasive. Neither *The Bremen* nor *Carnival Cruise* places any reliance on or even discusses the fact that the clauses at issue in those cases used particular or compulsory terms. Moreover, even if such a distinction were recognized, the language in question here—"This Agreement *shall* be governed by the laws of the State of New York, U.S.A. All parties hereby submit to the jurisdiction of the courts of the state of New York" (emphasis added)—supports the construction that the instant clause is "mandatory."

In sum, under federal law, the forum-selection clause at issue is valid and enforceable.

*New York law*

New York General Obligations Law § 5–1402 governs choice of forum. It states:

> Notwithstanding any act which limits or affects the right of a person to maintain an action or proceeding ... any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5–1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.

New York General Obligations Law § 5–1401 governs choice of law. It states:

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering

in the aggregate not less than two hundred fifty thousand dollars ... may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1–105 of the uniform commercial code.

The statutes are supplemented by New York Civil Practice Law and Rules, which provides that where New York, by contract, has been designated as the forum and its laws as governing, "the court shall not stay or dismiss any action on the ground of inconvenient forum." N.Y.C.P.L.R. Rule 327.

New York courts have interpreted the statutory scheme broadly to enforce choice of forum clauses and accept jurisdiction. *See Banco do Commercio e Industria de Sao Paolo S.A. v. Esusa Engenharia e Construcoes S.A.*, 173 A.D.2d 340, 569 N.Y.S.2d 708, 709 (1st Dept.1991) ("the legislature has specifically expressed its willingness that the courts of this state exercise jurisdiction ... defendants, having agreed not only to submit to New York jurisdiction but to be governed by New York law, may not now argue that this action should be dismissed"); *Rochester Community Savings Bank v. Smith*, 172 A.D.2d 1018, 569 N.Y.S.2d 277, 278 (4th Dept.1991) ("General Obligations Law § 5–1402 precludes dismissal of the action on the ground of inconvenient forum"); *Credit Francais v. Sociedad Financiera*, 128 Misc.2d 564, 490 N.Y.S.2d 670, 676 (Sup.Ct.N.Y.County 1985) ("New York, as the center of international trade and finance, has expressly recognized ... that its courts will be hospitable to the resolution of all substantial contractual disputes in which the parties have agreed beforehand that our neutrality and expertise should govern their relationships").

■ Fotheringham argues that the New York statutes do not apply to this case because (1) the amount in dispute involves less than $1 million and $250,000, respectively, as required by General Obligations Law §§ 5–1401 and 1402; and (2) the lawsuit involves Fotheringham's personal service to the plaintiffs as manager of its subsidiary, Iberica.

Fotheringham's first argument is premised on an incomplete reading of the New York statutes. He contends that the requisite amounts specified in §§ 5–1401 and 1402 do not refer to the total value of the contract, but to the sum of money in dispute in the lawsuit—in this case, the value of the non-compete clause which is $10,000. However, the plain statutory language, "arising out of a transaction covering in the aggregate," defeats his interpretation.

Because the non-compete clause sued upon is an integral part of the Agreement to sell shares to CNI—a transaction totaling in excess of $1 million—the requisite amounts of both §§ 5–1401 and 1402 have been met.

Fotheringham also argues that the New York statutes do not apply because this dispute involves his personal service to the plaintiffs as administrator of Iberica. Fotheringham claims that because he acted in his capacity as administrator, this is in fact a lawsuit by an employer against an employee.

The complaint alleges breach of the non-compete clause, breach of trust and unfair competition. As to the first allegation, plaintiffs make the interesting argument that a covenant not to compete is the opposite of a contract for labor or personal services. In any event, the covenant not to compete was a term of the Agreement to sell shares of CNAG to CNI, and was not part of an employment contract. The second allegation— that Fotheringham breached his obligations of trust and confidence to CNAG—is a tort claim for breach of a common-law duty. The third claim of unfair competition is also unrelated to a personal services contract.

In sum, the complaint alleges causes of action which fall outside the clause exempting a "contract, agreement or undertaking for labor or personal services." General Obligations Law § 5–1401. Accordingly, under New York law, the choice of forum clause must be enforced.

### III.

Defendant's due process claim is without merit. First, Defendant has waived this claim by consenting to submit to the jurisdiction of New York courts. Second, the contract was consummated in New York, thus meeting the "minimum contacts" requirement established in *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

\*　　\*　　\*

The defendant's motion to dismiss is denied. It is so ordered.