## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| PAULA H. CHAFFIN, MANNY FORMIGO, and BRENDA THURMON, et al, | ) ) ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | Dyer Chancery No. 97C183 |
| | ) | |
| VS. | ) | Appeal No. 02A01-9803-CH-00080 |
| | ) | |
| NORWEGIAN CRUISE LINE LTD. a/k/a NORWEGIAN CRUISE LINES, INC. a/k/a NORWEGIAN CRUISE LINES, a Division of Kloster Cruise Limited and KLOSTER CRUISE LIMITED, et al, | ) ) ) ) ) ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**April 7, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CHANCERY COURT OF DYER COUNTY
### AT DYERSBURG, TENNESSEE
### THE HONORABLE J. STEVEN STAFFORD, CHANCELLOR

**William R. Neese**
**Roy B. Herron**
**Nancy C. Miller-Herron**
**NEESE, HERRON & MILLER-HERRON**
Dresden, Tennessee
Attorneys for Appellants

**Joel H. Porter**
**Todd A. Rose**
**BURCH, PORTER & JOHNSON, PLLC**
Memphis, Tennessee
Attorneys for Defendants/Appellees
Norwegian Cruise Lines Limited and
Kloster Cruise Limited

**R. Dale Grimes**
**Bryan E. Larson**
**BASS, BERRY & SIMS PLC**
Nashville, Tennessee
Attorneys for Royal Caribbean Cruises, Ltd.

**Eugene J. Podesta, Jr.**
**BAKER, DONELSON, BEARMAN & CALDWELL**
Memphis, Tennessee
Attorney for Defendant/Appellee Princess Cruises, Inc.

**Jeffrey L. Lay**
**FARMER, JONES & HAMILTON**
Dyersburg, Tennessee
Attorney for Defendant/Appellee Princess Cruises, Inc.

**Kirk A. Patrick**
**GIBSON, DUNN & CRUTCHER**
Los Angeles, California
Attorney for Defendant/Appellee Princess Cruises, Inc.
**Douglas W. Wilkerson**

**Mark L. Hayes**
**WILKERSON GAULDIN & HAYES**
Dyersburg, Tennessee
Attorneys for Defendant/Appellee Carnival Corporation

**Lewis R. Clayton**
**Steven C. Herzog**
**Jeffrey A. Udell**
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**
New York, New York
Attorneys for Defendant/Appellee Carnival Corporation

**Marianna Williams**
**ASHLEY, ASHLEY & ARNOLD**
Dyersburg, Tennessee
Attorney for Intervening Plaintiffs

**AFFIRMED**

           **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HEWITT P. TOMLIN, JR., Sp. J.**
Paula Chaffin, Manny Formigo, Brenda Thurman, Brent Mezzacasa, Maria

Rodriguez, Robert Kirk, Lloyd Ramer, Jerry Knott, and Mike Freeman ("Plaintiffs"), who were appointed by the trial court as class representatives in this conditionally certified class action, appeal from the trial court's dismissal of their claims against four separate cruise line businesses, which included: (1) Norwegian Cruise Line Limited f/k/a Kloster Cruise Limited ("Norwegian"); (2) Carnival Corporation and/or Carnival Cruise Lines, Inc. ("Carnival"); (3) Royal Caribbean Cruises, Ltd. ("Royal Caribbean"); and (4) Princess Cruise Lines, Inc. ("Princess"). Plaintiffs' claims were based upon alleged Tennessee Consumer Protection Act (TCPA) violations and upon alleged fraudulent misrepresentations. The trial court dismissed Plaintiffs' claims based upon forum selection clauses contained in written cruise contracts. Based upon the following, we find that the subject forum selection clauses are neither invalid based upon fraud nor unenforceable based upon unreasonableness. Moreover, we find that the subject forum selection clauses do not contravene a strong Tennessee public policy. Accordingly, we find that the forum selection clauses are enforceable and that the trial court's dismissal was proper. We therefore affirm.

### Facts and Procedural History

On March 24, 1997, five individual plaintiffs commenced this action against Norwegian, Carnival, Royal Caribbean, and Princess. They applied for an order of conditional class certification to sue as representatives of a class, which was granted and entered by the trial court on March 25, 1997. This order appointed the five named plaintiffs as class representatives, and essentially described the class as "All persons who have been or will be assessed and who have paid or will pay port charges as a result of purchasing a cruise on any vessel . . . operaated [sic] by any Defendant . . . ." Thereafter, three additional named plaintiffs were added to the suit.

Each of the eight named plaintiffs that are parties to this suit had purchased a cruise from at least one of the named defendants. Paula Chaffin (a Shelby County resident), Manny Formigo (a Dade County, Florida resident), and Brenda Thurman (a Dyer County

3

resident) each purchased a cruise from Norwegian. Brent Mezzacasa (a Weakley County resident), Maria Rodriguez (a Dade County, Florida resident), Robert Kirk (a Dyer County resident), and Lloyd Ramer (a Dyer County resident) each purchased a cruise from Carnival. Jerry Knott (a Henry County resident) and Lloyd Ramer (a Dyer County resident) each purchased a cruise from Royal Caribbean. Last, Mike Freeman (a Weakley County resident) purchased a cruise from Princess.

Plaintiffs asserted the following factual allegations:

This class action is based on the manner and method in which Defendants lure customers with very attractive *all-inclusive prices* for their cruises and then, in addition to the advertised price, assess customers with non-existent or artificially inflated *Port Charges*.

Specifically, each Defendant is a luxury cruise ship operator and disseminates uniform and standardized advertising and promotional material and sells cruises in Tennessee and in the other States of the Union designated to create the impression to their customers and prospective customers that the *Port Charges*, which are usually well over one hundred dollars ($100.00) per passenger, are charges assessed by and paid directly to domestic and foreign port authorities and government agencies.

Defendants deliberately and intentionally failed to disclose to their customers that a significant portion of the money charged and collected as *Port Charges* is not, in fact, assessed by and paid to domestic and foreign port authorities and government agencies, but retained by Defendants as a secondary revenue stream. Therefore, Defendants assess and collect these non-existent and/or artificially inflated *Port Charges* under false pretenses and through unfair and deceptive practices.

In reality, *Port Charges* may include, but are not limited to taxes, generator fuel costs, garbage disposal, pollution fines, certain salaries and other costs, expenses and fees directly associated with the normal operation of the vessel, which are not actual port charges, but which are not included in the advertised cruise price.

. . . .

Plaintiffs . . . have been sold cruises as a result of the false, misleading and fraudulent advertising and representations made by Defendants.

. . . .

As a direct and proximate result of Defendants' conduct as aforesaid, Plaintiffs and the other members of the class were assessed and paid the non-existent or artificially inflated *Port Charges*, to their detriment.

The action was originally brought pursuant to Tennessee Code Annotated section 47-18-109 based upon each defendant's alleged use or employment of an unfair or deceptive act or practice declared to be unlawful by the Tennessee Consumer Protection

4

Act ("the TCPA").[1] In addition to seeking recovery of actual damages under section 47-18-109, Plaintiffs sought treble damages based upon willful or knowing TCPA violations, and reasonable attorney fees and costs. See Tenn. Code Ann. § 47-18-109(a)(1), (a)(3), & (e).

Subsequently, Plaintiffs asserted an additional claim based upon fraudulent misrepresentation against three of the defendants -- Norwegian, Carnival, and Royal Caribbean. In support of their fraudulent misrepresentation claims, Plaintiffs asserted substantially the same factual allegations that were asserted to support their TCPA claim. Among other things, they alleged that "Norwegian, Carnival, and Royal Caribbean, each advertised cruises at attractive *all-inclusive* prices plus port charges to the general public throughout Dyer County, the State of Tennessee and the United States by various means including, but not limited to, print and broadcast media, printed brochures and other materials."

Thereafter, each defendant moved for dismissal based, among other things, upon forum selection clauses that were contained in written cruise contracts. Each of these forum selection clauses essentially provided that any and all claims, disputes, or controversies whatsoever arising from, in connection with, or incident to each cruise contract must be litigated, if at all, in a particular forum.[2] The forum selection clause in

---

1. Interestingly, section 47-18-109 authorizes persons to "bring an action *individually*," yet Plaintiffs assert this action both individually *and* as representatives on behalf of a class. Though we are unaware of any prior Tennessee case addressing this issue, this issue is not presently before this Court, and we therefore express no judgment or opinion regarding it.

2. (a) **Norwegian:** Norwegian's forum selection clause states the following:

> 28. This contract shall be governed in all respects by the laws of the State of Florida and the laws of the United States of America. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract . . . shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.

(b) **Carnival:** Carnival's forum selection clause states the following:

> 8. It is agreed by and between the guest and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A. to the exclusion of the Courts of any other state or country.

(c) **Royal Caribbean:** Royal Caribbean's forum selection clause states the following:

> 6. IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT

Norwegian's cruise contract established "Dade County, Florida, U.S.A." Carnival's forum selection clause established "the State of Florida, U.S.A." Royal Caribbean's clause established "Miami, Florida, U.S.A." Last, Princess's forum selection clause established "the County of Los Angeles, California, U.S.A."

The defendants' motions to dismiss were heard by the trial court on October 15, 1997, at which time the trial court limited its consideration exclusively to whether dismissal was appropriate based upon the forum selection clauses. In its subsequent order, which was not entered until February 13, 1998, the trial court granted the defendants' motions to dismiss based upon the forum selection clauses. Plaintiffs thereafter moved for the trial court to alter or amend its order. In support of its motion, Plaintiffs filed and brought to the trial court's attention various pleadings, of which Plaintiffs had previously been unaware, that had been filed by the Florida defendants (Norwegian, Carnival, and Royal Caribbean) in federal court in Florida. Plaintiffs argued that the Florida defendants had maintained positions in the Florida cases that were inconsistent and contrary to the positions they asserted in this action. On February 24, 1998, Plaintiffs' motion to alter or amend was denied by the trial court. Thereafter, Plaintiffs appealed.

Accordingly, this Court is faced with whether the trial court erred in dismissing Plaintiffs' claims based upon the forum selection clauses. It should be noted, however, that all other defenses that were raised by the defendants, such as lack of personal jurisdiction and forum non conveniens, are not presently before this Court, and our opinion, like the trial court's order of dismissal, is limited to the enforceability of the forum selection

LOCATED IN MIAMI, FLORIDA, U.S.A., TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI, FLORIDA.

(d) **Princess:** Princess's forum selection clause states the following:

17. NOTICE OF CLAIMS AND SUITS; TIME LIMITATION; VENUE.
. . . .
You may sue only in Los Angeles, California. Any lawsuit arising out of or relating to Your Cruise . . . must be brought by You and litigated before a court located in the County of Los Angeles, California, U.S.A., to the exclusion of the courts of any other country, state, city or county.

6

clauses.

## Analysis

"A passenger ticket for an ocean voyage is a maritime contract." Hodes v. S.N.C. Achille Lauro ed Altrigestione, 858 F.2d 905, 909 (3rd Cir. 1988) (citing The Moses Taylor, 71 U.S. 411, 427 (1886)). See also Thomas v. Costa Cruise Lines N.V., 892 S.W.2d 837, 840 (Tenn. App. 1994). In this case, the ticket contracts, within which the forum selection clauses are contained, are such maritime contracts, while the conduct underlying Plaintiffs' claims does not amount to a maritime tort governed by maritime law.[3] The enforceability of a forum selection clause in a maritime contract, however, does *not* require a plaintiff's claims to be maritime claims. See Rams v. Royal Caribbean Cruise Lines, Inc., 17 F.3d 11, 12 (1st Cir. 1994). In this case, each defendant's forum selection clause is broadly worded to encompass *all* claims which arise in connection with the applicable cruise contract. No language limits the applicability of the clauses to contract claims, tort claims that arise out of events occurring at sea, or claims that arise out of events occurring after the cruise ticket purchase. Moreover, no language limits the applicability of the clauses to maritime claims, generally. As written, each clause pertains also to tort claims that arise out of events occurring on land before the ticket purchase, *provided* the claim asserted nonetheless arises from or is in connection with the cruise contract. In this case, the

_____

3. Even though this action was brought in state court, the issue of whether conduct amounts to a "maritime tort," subject to maritime law, can be determined based upon whether federal "admiralty or maritime jurisdiction" could be invoked based upon such conduct. See 28 U.S.C. § 1333(1). In Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the United States Supreme Court reviewed whether admiralty or maritime jurisdiction can be invoked based upon tortious conduct by stating the following:

> [A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved" to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the [tortious conduct] shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (citations omitted). In the instant case, Plaintiffs claims do not satisfy the location test that would be necessary to invoke admiralty or maritime jurisdiction. The alleged conduct did not occur on navigable water, and the alleged financial loss resultant from the port charges was not "caused by a vessel on navigable water." Therefore, the alleged conduct does not amount to a "maritime tort" subject to maritime law. If the alleged conduct had amounted to a maritime tort, the same substantive law as would be applied had the suit been instituted in admiralty in a federal court would govern the underlying claims. See Hodes, 858 F.2d at 909; Shannon v. Anchorage, 478 P.2d 815 (Alaska 1970). See also Martin J. Norris, The Law of Maritime Personal Injuries § 5:11, at 279-80 (4th ed.1990).

claims are based upon port charges assessed "as a result of purchasing a cruise" and, as such, are clearly related to or in connection with the cruise contracts.

In this case, Plaintiffs contend that, because their claims are not maritime claims, the enforceability of the applicable forum selection clauses should not be governed by maritime (federal) law. As with the maritime contracts within which the clauses are contained, however, maritime law governs the validity and enforcement of the forum selection clauses.[4] Hodes, 858 F.2d at 909 (stating that the enforceability of a forum selection clause within a maritime contract is a matter "governed by the general maritime, not the local state, law").

In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, , 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) the United States Supreme Court recognized that, under federal law, forum selection clauses in particular cases can be found to be invalid and unenforceable if they are shown to be unreasonable or unjust under the circumstances, or if the clause was invalid for such reasons as fraud or overreaching. 407 U.S. at 10, 15. The Court subsequently elaborated upon its fraud reference in Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), wherein the Court stated the following:

> In *The Bremen* we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private . . . agreement [is] unaffected by fraud . . . ." 407 U.S. at [12-13]. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause in unenforceable. Rather, it means that . . . [a] forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

417 U.S. at 519 n. 14. In this case, Plaintiffs have not asserted that the inclusion of the

---

4. In their brief, Plaintiffs further contend that Norwegian, Carnival, and Royal Caribbean should be judicially estopped from arguing that maritime law has any application to the instant case because they maintained inconsistent positions in similar Florida federal cases. In support of this contention, Plaintiffs submitted pleadings that each of these three defendants filed in these Florida federal cases. Upon review of these pleadings, we note that each of these defendants asserted *jurisdictional* challenges to the federal courts' authority to adjudicate the similar Florida cases. They sought dismissal of the cases pending in federal court because, among other things, the cases were purportedly filed under the federal courts' admiralty jurisdiction, yet the consumer protection and fraud claims being asserted were not maritime claims. The defendants argued to the federal court, among other things, that the claims were land based tort claims arising out of events occurring before entry into a maritime contract. These jurisdictional arguments, however, are not inconsistent with these defendants' positions that have been asserted in the instant case. In fact, we have recognized that the claims asserted in the instant case are *not* maritime claims. The application of maritime law in the instant case, however, does not pertain to the underlying claims but, rather, pertains to the construction and enforcement of the forum selection clauses within maritime contracts. The fact that these defendants assert that maritime law governs the validity and enforcement of the forum selection clauses, therefore, is *not* inconsistent with their earlier positions in the Florida cases.

8

forum selection clauses was the product of fraud or coercion. Moreover, while they have asserted claims involving fraudulent misrepresentations, they have not sought rescission of the cruise contract. Therefore, the clauses are not simply void, and the issue of enforceability remains based upon whether the forum selection clauses in this case are unreasonable under the circumstances. In these regards, the Supreme Court has further recognized that parties seeking to have forum selection clauses set aside based upon unreasonableness "should bear a heavy burden of proof." Id. at 17.

In Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the United States Supreme Court specifically addressed and analyzed the reasonableness of forum selection clauses under federal law *in cruise line contracts*. 499 U.S. at 587-90. In Shute, the Supreme Court observed the following:

> [The plaintiff/passengers'] passage contract was purely routine and doubtless nearly identical to every commercial passage contract issued by [the defendant cruise line business] and most other cruise lines. In this context, it would be entirely unreasonable for us to assume that [the plaintiffs] -- or any other cruise passenger -- would negotiate with [the defendant] the terms of a forum-selection clause in an ordinary commercial cruise ticket. Common sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line. . . . .

499 U.S. at 593 (citations omitted). These observations are equally applicable to the instant case. The Shute Court went on to analyze Carnival's forum selection clause, which was identical to Carnival's forum selection clause in the instant case and which was quite similar to the other forum selection clauses in this case, by stating the following:

> Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

Id. at 593-94 (citations omitted). After considering the above matters in Shute, and

because the cruise passengers in <u>Shute</u> did not claim lack of notice of the forum clause, the Supreme Court concluded that the cruise passengers did not satisfy "the 'heavy burden of proof' required to set aside the clause" based upon unreasonableness. <u>Id.</u> at 595.

As in <u>Shute</u>, no dispute exists before this Court as to whether Plaintiffs had sufficient notice of the pertinent forum selection clauses before entering into their respective cruise contracts. Therefore, consistent with the Supreme Court's reasoning in <u>Shute</u>, we find that Plaintiffs in the instant case have not satisfied "the 'heavy burden of proof' required to set aside the clause" and that each defendant's forum selection clause would, thus far, be valid and enforceable.[5]

---

5. This conclusion is consistent with several other cases, including two federal district court cases, that are substantially the same as the instant suit. In <u>Ackerman v. Carnival Corp.</u>, No. 3:97CV-339-H (W.D.Ky. Jan. 21, 1998), Kentucky Consumer Protection Act claims and fraud claims, which were brought on behalf of a class that was limited to only "persons in Kentucky who paid port charges," were dismissed based upon Carnival's forum selection clause. Similarly, in <u>Drogmiller v. Carnival Corp.</u>, No. 97-CV-72882-DT (E.D.Mich. March 11, 1998), Michigan Consumer Protection Act claims and other claims, including fraud, were dismissed based upon Carnival's forum selection clause in another "port charges" case.

Moreover, we note that each defendant in this case supported its respective motion to dismiss with testimony to counter any assertion of unreasonableness.

(a) **Norwegian:** In support of Norwegian's motion to dismiss, Norwegian filed a supporting affidavit that explained, among other things, the following:

> Norwegian . . . has its principal place of business in Miami, Dade County, Florida. Accordingly, most of Norwegian's records relating to cruises are located there. Many of the potential witnesses in a case involving port charges work in the Miami, Florida office. Most of Norwegian's ships sail . . . from ports in the State of Florida.

(b) **Carnival:** In support of Carnival's motion to dismiss, Carnival filed a supporting affidavit that explained, among other things, the following:

> [T]he Carnival . . . executives who would testify at trial, and the Carnival . . . documents that would be introduced into evidence, are conveniently available in Florida. Carnival . . . has its principal office and corporate headquarters . . . in Miami, Florida. . . . . [Carnival's] records, documentation and other evidence of port charges are maintained only in Florida. [Carnival's] management, as well as its accounting and sales departments, are also located in Florida.

(c) **Royal Caribbean:** In support of Royal Caribbean's motion, Royal Caribbean filed a supporting affidavit that explained, among other things, the following:

> Royal Caribbean . . . has its principal place of business in Miami, Dade County, Florida.
> Royal Caribbean operates its cruise ships from its Miami offices. Moreover, Florida ports are the primary point of departure for Royal Caribbean's cruises from the United States. Accordingly, most of Royal Caribbean's business records relating to cruises and it's employees with knowledge about the pricing of cruises are located in Florida.

(d) **Princess:** In support of Princess's motion, Princess filed a supporting affidavit that explained why Princess incorporated its forum selection clause in its Passage Ticket and Contract:

> First, [Princess] has passengers from many different states and foreign countries, and specifying one location for litigation alleviates confusion as to where litigation could occur. Second, [Princess] maintains its principal place of business in Los Angeles. Its Office of Legal Affairs and its Legal Department operate out of Los Angeles.
> Accordingly, the County of Los Angeles has served as a convenient location for production of corporate and vessel records as well as for deposing corporate officers and

Our analysis, however, does not end with considering whether the forum selection clauses are invalid based upon fraud or overreaching or whether the forum selection clauses are unenforceable based upon unreasonableness under the circumstances. In M/S Bremen, the Supreme Court further stated:

> A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

407 U.S. at 15. Cf. 15A C.J.S. Conflict of Laws § 4(10) (1967) ("A contract valid under its governing law will be enforced everywhere unless contrary to the . . . public policy of the forum, [or] unless it would work injury to the state or its citizens."). Given that we have already concluded that maritime law, and not Tennessee law, governs the construction and enforcement of the forum selection clauses in this case, Plaintiffs would have us conclude that enforcement of the forum selection clauses would contravene the TCPA and, therefore, the public policy underlying the TCPA.

The TCPA was enacted "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly *within this state*." Tenn. Code Ann. § 47-18-102 (emphasis added). Therefore, the TCPA's purpose is *not* contravened by enforcing forum selection clauses like those in the instant case as to any plaintiff whose dealings with any defendant did *not* occur in part or wholly *within* Tennessee. Accordingly, the forum selection clauses in the instant case are enforceable as to any such plaintiff, and dismissal of such plaintiff's claims is proper. This is not to say, however, that the forum selection clauses are unenforceable as to those plaintiffs whose claims arose from an act committed during trade or commerce within Tennessee. Such claims must be considered further below.

Section 47-18-109(a)(2) of the TCPA provides the following:

The [TCPA] action may be brought in a court of competent jurisdiction in the county where the alleged unfair or deceptive act or practice took place, is taking place, or is about to take place, or in the county in which such person

---

employees. Moreover, if [Princess] found that it was required to litigate in numerous fora, that fact would create pressure to increase ticket prices.

> resides, has such person's principle place of business, conducts, transacts, or has transacted business, or, if the person cannot be found in any of the foregoing locations, in the county in which such person can be found.

Tenn. Code Ann. § 47-18-109(a)(2) (1995). The "person" referred to in this statute is the person who has used or employed an unfair or deceptive act or practice declared to be unlawful by the TCPA. See id. § 47-18-109(a)(1) & (2). Cf. id. § 47-18-108(a)(1) & (3). Section 47-18-113(a) of the TCPA further provides, "No provision of this part may be limited or waived by contract, agreement, or otherwise, notwithstanding any other provision of law to the contrary . . . ." Tenn. Code Ann. § 47-18-113(a). Based upon these two statutes, Plaintiffs contend that the forum selection clauses cannot limit or waive their ability to bring their action in Tennessee.

In furtherance of the TCPA's purpose, the TCPA confers various substantive rights and benefits including, among other things, the right to bring an action to recover actual damages. See Tenn. Code Ann. § 47-18-109(a). Section 47-18-109(b), however, simply establishes the particular counties in Tennessee in which plaintiffs may bring consumer protection claims.[6] These same or similar consumer protection claims can sometimes be litigated, however, in other jurisdictions. In fact, this Court has previously implicitly recognized in two prior unpublished opinions that a party's ability to bring a TCPA action in Tennessee can, in some such instances, be limited or waived. See Tennsonita (Memphis), Inc. v. Cucos, Inc., 1991 WL 66993 (Tenn. App. May 2, 1991) (affirming the enforcement of a forum selection clause in accordance with Tennessee law, even though the plaintiffs' claims included TCPA claims); Lien v. Couch, No. 01A01-9609-CV-00398, 1998 WL 848101 (Tenn. App. Dec. 8, 1998) (recognizing that a plaintiff's ability to bring a TCPA action in Tennessee *can* be limited through the judicial doctrine of claim preclusion, even though such an action was commenced prior to entry of the foreign judgment on related claims). In this case, whether the forum selection clauses can be enforced (for claims that arose from an act committed during trade or commerce in part or wholly within

_____

6. As stated earlier, the only issue before this Court is the enforceability of the forum selection clauses. While the record demonstrates that each defendant's principle place of business is elsewhere, and that none of the defendants "reside" in Dyer County, we express no opinion as to whether Dyer County is a proper venue as to particular plaintiffs (*i.e.*, whether each act from which each plaintiff's claim arose took place in Dyer County, or whether each defendant conducts, transacts, or has transacted business in Dyer County).

Tennessee) depends upon whether the substantive rights and remedies afforded under the TCPA and asserted and/or sought in this case can similarly be asserted and/or sought in the selected forum. <u>Cf.</u> <u>Tennsonita</u>, 1991 WL 66993, *3-4 (enforcement of a forum selection clause under Tennessee law depends, in part, upon whether "effective relief" can be secured in the selected forum); <u>Lien</u>, 1998 WL 848101, *3-5 (precluding a plaintiff from asserting a TCPA action in Tennessee based upon claim preclusion depends, in part, upon whether the same claims could have been asserted in the foreign jurisdiction). In other words, enforcement of the forum selection clauses depends upon whether such enforcement would limit or waive Plaintiffs' substantive rights and remedies afforded under the TCPA. If such rights can be asserted and remedies can be sought in the designated fora, then the TCPA's purpose is not contravened by the forum selection clauses.

In order to determine whether Plaintiffs will be able to assert substantially the same rights and seek substantially the same remedies in a selected forum, two questions must be answered. <u>See</u> <u>Lien</u>, 1998 WL 848101, *3. First, could the same rights and remedies be asserted under the law of the selected forum? <u>Id.</u> Second, could the *TCPA* claims be asserted and litigated in the selected forum? <u>Id.</u> If the answer to answer to either or both of these questions is yes, then the substantive rights or benefits established under the TCPA are not limited or waived, the TCPA's purpose is not contravened, and the applicable forum selection clause is enforceable. <u>See</u> <u>id.</u>

In this case, the forum selection clauses that are applicable to three of the named defendants, Norwegian, Carnival, and Royal Caribbean, designated Florida. The forum selection clause that is applicable to the remaining defendant, Princess, designated California. Plaintiffs, however, have not raised and averred either Florida's or California's laws. Because they have failed to raise these foreign laws, and because the foreign laws are not included in the record on appeal, we find it unnecessary for this Court to ascertain and judicially notice any such laws.[7] Therefore, we must presume that the consumer

---

7. Had Plaintiffs properly raised this matter in the trial court, the trial court would have been compelled to take judicial notice of the applicable foreign laws under Tennessee Rule of Evidence 202(a). This Court, however, is authorized to take judicial notice of a law or statute of another state only when the law or statute is included in the record on appeal. <u>De Soto Hardwood Flooring Co. v. Old Dominion Table & Cabinet Works</u>, 163 Tenn.

protection laws of Florida and of California are the same as the laws of the state of Tennessee.  See Kaset v. Freedman, 22 Tenn. App. 213, 120 S.W.2d 977, 980 (1938). Accordingly, we find that enforcement of the forum selection clauses will not limit or waive Plaintiffs' substantive rights and remedies afforded under the TCPA and will not contravene the TCPA's purpose.  As such, we conclude that enforcement of the forum selection clauses will not "contravene a strong public policy," and that the clauses are enforceable.

**Conclusion**

Based upon the foregoing, we affirm the trial court's dismissal.  Costs of this appeal are taxed to Plaintiffs, for which execution may issue if necessary.

_____
                                    HIGHERS, J.

CONCUR:

_____
FARMER, J.

---

532, 43 S.W.2d 1069, 1070 (1931) (section 5586 of Thompson's Shannon's Code (now codified as Tenn. Code Ann. § 24-6-207) "authorizes this Court to take judicial notice of the laws and statutes of another state and decide upon them accordingly . . . only . . . when such laws are read in evidence in the lower court-- pleaded, or at least proven, below"); Kaset v. Freedman, 22 Tenn. App. 213, 120 S.W.2d 977, 980 (1938).

14

TOMLIN, Sp. J.