DISSENTING OPINION
Coven, J.
The plaintiff conceded that it has financed 691,000 leases and has commenced 92,271 contract actions, the vast majority in Massachusetts, in the last 17 years. Answers were filed in only 1,654 of those contract actions.
It is settled that forum selection clauses are to be enforced in Massachusetts “if it is fair and reasonable to do so .’’ Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575 (1995). To acknowledge the validity of this proposition does not require *62 losing sight of the principles of fairness and reasonableness which alone permit enforcement. I will concede that utilizing a case-by-case evaluation of these factors, the Majority position is sound. I disagree with the majority, however, in their narrow evaluation of the factors in this case.
The plaintiff is a corporation with $120,000,000.00 in annual cash receipts. It is undisputed that the plaintiff “targets owner-operated or other small commercial enterprises, with little business credit history and limited or poor personal credit history at the owner level.” Undoubtedly, there exists a risk in the extension of any credit. But where a party’s extension of credit results in the breach rate admitted herein, a judicial system cannot narrowly limit its focus by proceeding on a case-by-case basis, thereby overlooking the larger picture, the larger problem and the real issues of fairness and reasonableness. Over 92,000 of the marginal credit risk small businesses who were successfully targeted and signed by the plaintiff have defaulted on their Leasecomm loans. This is undeniable evidence that the plaintiff either intentionally ignores, or egregiously mismanages, any sound business risk analysis in its extension of credit. Yet the plaintiff fully anticipates being absolved of its own business failure and reaping full profits. It succeeds in doing so by demanding that the Massachusetts judiciary automatically adhere to the “modern view” of forum selection clause jurisprudence, applying it narrowly, on a case-by-case basis, as if each case were not a component of a business scheme involving hundreds of thousands of cases in this Commonwealth. The plaintiff essentially asks the Massachusetts courts, through judicial adjudication by way of default, to insure the plaintiffs right to invoke state comity to enforce judgments that are based upon unsound business relationships. Given the large scale involved, it is fundamentally wrong for the courts of this Commonwealth to permit themselves to be made a participant in such a scheme.
The inference to be drawn from the plaintiffs practices is clear. Plaintiff provides credit to small businesses at risk that cannot secure credit elsewhere. Plaintiff imposes a forum selection clause that is not negotiable. The small business must accept that clause or be denied financing. Over 92,000 of these businesses default on their financing. Relying on this fact, plaintiff has inserted the forum selection clause knowing, if not counting upon, the fact that these small businesses could never afford the costs involved in traveling to Massachusetts to defend against these actions. Due process is certainly frustrated when close to 55,000 contract actions are determined by default judgment due to the conscious and calculated efforts by the plaintiff to use Massachusetts court enforcement of a forum selection clause to deprive small business defendants of the ability to appear and defend themselves. See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-19 (1972) (A forum selection clause will typically not be enforced where one of the following conditions is present: fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum that the defendant is effectively deprived of his day in court).
The United States Supreme Court requires a court to “scrutin[izej” forum selection clauses “for fundamental fairness.” Carnival Cruise Lines v. Shute, 499 U.S. 585, 595 (1991). Part of that scrutiny involves a consideration of whether there exists any “bad-faith motive” in employing a forum selection clause. Id. The concept of “bad-faith motive” must be utilized as a critical factor in the judicial evaluation of the forum selection clause at issue herein. In my view, it is obvious that the plaintiffs employment of a forum selection clause is simply a means to achieve financial profit, upon a patently unsound and predatory business plan, through the defaulting of small business defendants. As noted, the adoption of the modern view of forum selection clauses by our Supreme Judicial Court rests upon “fairness” and “reasonableness.” That standard reflects nothing less than the essence of our judicial system. In my opinion, our system should not be used, through the *63 enforcement of a forum selection clause, to exploit and further unsound business practices. This is not to say that I would not otherwise hold the parties to the contractual business relationship they created. I merely state my disagreement with the Majority in allowing the plaintiff to capitalize on its business model and its knowing and systematic program of filing litigation which almost inevitably results, and is intended to result, in default judgments. It is a perversion to say that the adjudication by default of nearly fifty-five thousand cases through the use of a forum selection clause somehow measures up to the spirit and substance of fairness and reasonableness envisioned by the United States Supreme Court and our Supreme Judicial Court.[4]

 The Massachusetts Supreme Judicial Court has held that the commencement of consumer collection lawsuits filed in courts that are distant from consumers’ homes, while legal, can still constitute an unfair consumer practice in violation of G.L.c. 93A. See Schubach v. Household Finance Corp., 375 Mass. 133, 135 (1978). The practice of making it more difficult for civil defendants to respond to litigation is referred to as “distant forum abuse.” Id. at 137 n.5.