[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14324

_____

D.C. Docket No. 1:18-cv-21125-CMA

LAURA GOODLOE,
as Personal Representative of the
Estate of Richard J. Puchalski,

                                          Plaintiff - Appellee,

versus

ROYAL CARIBBEAN CRUISES, LTD.,

                                          Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 21, 2021)

Before JORDAN, JILL PRYOR and BRANCH, Circuit Judges.

JILL PRYOR, Circuit Judge:

Laura Goodloe brought this wrongful death suit on behalf of the estate of her deceased father, Richard Puchalski, against Royal Caribbean Cruises ("RCL"). Mr. Puchalski died of a heart attack after seeing a doctor on board an RCL cruise ship. In the district court, a jury found RCL liable and awarded pecuniary and substantial non-pecuniary damages. RCL now appeals the award of non-pecuniary damages.

The question before us—whether Ms. Goodloe can recover non-pecuniary damages—depends on the law that applies here. General maritime law does not allow non-pecuniary damages for wrongful death, but the Supreme Court has held that state law may supplement general maritime law for damages in wrongful death suits for deaths that occur within state territorial waters. *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 216 (1996). The district court found that Florida law governs the award of damages in this case. On appeal, RCL argues that this was error and that Wisconsin law should apply instead. After careful consideration of the facts and circumstances of this case, and with the benefit of oral argument, we affirm.

2

## I.    BACKGROUND

Mr. Puchalski, a Wisconsin citizen, and his wife took a cruise aboard an RCL cruise ship.  While the ship was docked in Juneau, Alaska, he began experiencing shortness of breath and went to the ship's infirmary.  He was examined by the ship's physician, Dr. Amanda Saunders, and given prescription medication—an ACE inhibitor, a beta blocker, and a diuretic.  Mr. Puchalski returned to his quarters, where he collapsed.  He was taken to a hospital in Juneau and from there was airlifted to an intensive care unit in Anchorage, Alaska, where he died several days later.

Ms. Goodloe, on behalf of Mr. Puchalski's estate, sued RCL, a Liberian corporation headquartered in Florida.  She brought the suit in the Southern District of Florida as required by the forum selection clause on Mr. Puchalski's cruise ticket.  She alleged two claims for relief, negligent medical care and treatment by RCL employees or actual agents and negligence against RCL itself based on its apparent authority over those employees or actual agents.

Before trial, the parties raised the issue of whether Ms. Goodloe could recover non-pecuniary damages on her claims.  The dispute turned on a choice-of-law question:  whether Wisconsin or Florida law should supplement general maritime law as allowed by *Calhoun*, 516 U.S. at 215–16.  Florida law would have authorized non-pecuniary damages.  *See* Fla. Stat. § 768.21 (allowing damages for

loss of companionship and mental pain and suffering). Wisconsin law would not have. *See* Wis. Stat. §§ 895.03, 895.04(4) (capping non-pecuniary damages in wrongful death actions to $350,000 for deaths that are caused within Wisconsin and providing no remedy for deaths that happen outside the state). Rather than litigate this choice-of-law question before trial, the parties agreed to address it only if a damages award made it necessary.

Following a four-day trial, the jury found RCL liable and awarded damages. After a stipulated reduction and application of the jury's comparative fault percentages to the damages award, the total award to Ms. Goodloe was $3,384,073.22 in damages, $3,360,000 of which represented non-pecuniary losses. The non-pecuniary award implicated the unresolved choice-of-law question, so RCL filed a Motion for Remittitur arguing that Wisconsin law should apply under the maritime choice-of-law test established in *Lauritzen v. Larsen*, 345 U.S. 571 (1953). To support its argument, RCL emphasized that Wisconsin was Mr. Puchalski's domicile before his death and he received his cruise ticket in Wisconsin. RCL argued that because Wisconsin law does not provide for the recovery of damages for deaths caused outside the state, the award in this case should be reduced to include only pecuniary damages, which are allowed under maritime law.

The district court denied RCL's Motion for Remittitur and determined that Florida law governs damages in this case. In reaching this decision, the district court stated that "the *Lauritzen* factors, at their core, aim to identify the state with the most significant relationship to the action." Doc. 182 at 21.[1] It also noted that RCL was headquartered in Florida and the ticket had a Florida forum selection clause. The district court then contrasted Wisconsin law's territorial limitation with Florida law's lack of one. Because Wisconsin's wrongful death law does not apply to deaths occurring outside the state, the court concluded that Wisconsin law should not be applied in a case pending in Florida to a death that occurred in Alaska. Therefore, the court applied Florida law and denied the motion.

This appeal followed.

## II.    STANDARD OF REVIEW

Generally, we review the denial of a motion for remittitur under an abuse of discretion standard. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013). "A ruling based on an error of law is an abuse of discretion." *Smith v. Casey*, 741 F.3d 1236, 1244 (11th Cir. 2014) (alteration adopted) (internal quotation marks omitted). A conflict-of-laws issue "present[s] a legal question which appellate courts review *de novo.*" *Grupo Televisa, S.A. v. Telemundo*

---

[1] "Doc." numbers refer to the district court's docket entries.

*Commc'ns Grp., Inc.*, 485 F.3d 1233, 1239 (11th Cir. 2007). In this case, we consider the conflict-of-laws issue of which state's law should supplement federal maritime law. Our standard of review thus is *de novo*, even though the question comes to us on review of the district court's denial of a motion for remittitur.

## III. DISCUSSION

Because Mr. Puchalski's death occurred in navigable waters, general maritime law governs the case and provides the wrongful death cause of action. General maritime law does not, however, provide a comprehensive remedy for all deaths that occur in state territorial waters. Instead, state statutes may supplement maritime law and allow for remedies beyond those afforded by maritime law alone. *Calhoun*, 516 U.S. at 215–16.

Relying on *Calhoun*, the parties here agree that state law can supplement general maritime law and, depending on the remedies offered by state law, provide additional remedies. They disagree over which state's law should apply. RCL argues for Wisconsin law, which caps non-pecuniary damages at $350,000 for wrongful deaths caused in Wisconsin. Wis. Stat. § 895.04(4). Wisconsin does not apply its own law to deaths that happen outside of the state.[2] *Id.* § 895.03; *see also*

---

[2] Wisconsin's wrongful death statute provides:

Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect

*Waranka v. Wadena Ins. Co.*, 847 N.W.2d 324, 329 (Wis. 2014) ("If no Wisconsin wrongful death cause of action arises under Wis. Stat. § 895.03, . . . Wis. Stat. § 895.04 terms and limitations do not apply.").  Ms. Goodloe urges us to apply Florida law, which, by contrast, allows for non-pecuniary damages with no cap and applies regardless of where the death is caused.[3]  *See* Fla. Stat. §§ 768.19 (cause of action), 768.21 (damages).  If Florida law supplements, the damages award stands. If Wisconsin law supplements, the fact that the death occurred outside Wisconsin forecloses the availability of non-pecuniary damages.

The Supreme Court's decision in *Calhoun* did not address how we should resolve the choice-of-law issue, 516 U.S. at 216 n.14, however, and we have not previously addressed how to resolve a domestic choice-of-law question under

---

thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; *provided, that such action shall be brought for a death caused in this state*.

Wis. Stat. § 895.03 (emphasis added).

[3] Florida's wrongful death statute provides:

Damages may be awarded as follows:
　　　(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value . . .
　　　(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury. . . .
　　　(5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.

Fla. Stat. § 768.21.

7

maritime law. The parties point to *Lauritzen*, in which the Supreme Court addressed how to resolve *international* choice-of-law questions in maritime tort cases. 345 U.S. at 571. We agree with the parties that the test established in *Lauritzen* applies here, but it must be adjusted for application in the domestic choice-of-law context. Applying a modified *Lauritzen* test to the facts of this case, we conclude that Florida law supplements the remedies available under maritime tort law.

### A. Modified *Lauritzen* Test for Domestic Choice-of-Law Questions Arising Under Maritime Law

In deciding how to apply *Lauritzen* in the domestic context, we begin with a brief discussion of the case itself and then explain how its factors apply in a domestic choice-of-law analysis. In *Lauritzen*, a Danish seaman was injured while working on a Danish ship that was docked in Cuba. *Id.* at 573. He brought a claim under the Jones Act against the ship's owner in the Southern District of New York, where he had joined the crew and signed his employment contract. *Id.* The shipowner argued that Danish law, rather than the federal Jones Act, applied, and that the seaman had received all the damages he was entitled to under Danish law.[4] *Id.* at 574–75.

---

[4] Neither party argued for the application of Cuban law.

8

To decide which law applied, the Court analyzed seven factors or points of contact that "alone or in combination, are generally conceded to influence choice of law to govern a tort claim, particularly a maritime tort claim." *Id.* at 583. In discussing the factors, the Court did not establish a rigid test for determining which jurisdiction's law to apply. Instead, it provided a framework to help determine which sovereign has the most significant connection to the case and the greatest interest in having its law applied. *Id.* at 582 ("Maritime law, like our municipal law, has attempted to avoid or resolve conflicts between competing laws by ascertaining *and valuing* points of contact between the transaction and the states or governments whose competing laws are involved." (emphasis added)); *see Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 346 (3d Cir. 2000) ("[T]he *Lauritzen* factors, viewed as a whole, represented a departure from the application—in admiralty cases—of the lex loci delecti rule and a move toward analyzing which state had the most significant relationship to the incident and the dominant interest in having its law applied."). The factors the Court considered were: (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance or domicile of the defendant shipowner, (5) place of contract, (6) inaccessibility of the foreign forum, and (7) law of the forum. *Id.* at 584–92. In a later Jones Act suit by a noncitizen seaman against a noncitizen shipowner, the Court added an eighth factor: the shipowner's base of operations.

9

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970). Other factors, such as the structure of the remedial schemes under each nation's laws, may also be considered. *See Lauritzen*, 345 U.S. at 575–76 (evaluating the Dutch scheme for torts by sailors against shipowners as an indication of the Netherlands' interest in the suit).

Both parties agree that *Lauritzen* applies in this case. Indeed, one of our sister circuits has used *Lauritzen* to resolve a domestic choice-of-law dispute in a maritime tort case, *Calhoun v. Yamaha Motor Corp*, on remand from the Supreme Court. However, two of the *Lauritzen* factors address concerns not present in a domestic choice-of-law analysis. First, the law of the flag, central to the Court's decision in *Lauritzen*, 345 U.S. at 584–85, applies purely in the international context. A ship's flag indicates its nationality; thus, the law of the flag signifies a country's interest in a case against its shipowner national. *Id.* at 584. There is no comparable indicator in a domestic choice-of-law dispute.

Second, the inaccessibility of the foreign forum is potentially relevant only in an international context. Domestically, federal courts routinely apply the law of states other than the forum. By contrast, in international choice-of-law cases the question of accessibility may be more pressing, as other countries may require a tort to be litigated in their own courts. *See id.* at 590 (noting that Panama allows

seamen's suits under Panamanian law to be brought only in Panamanian courts). That consideration does not exist here.

We are left with six *Lauritzen* factors to consider when conducting a domestic choice-of-law analysis under maritime law:  (1) place of the wrongful act, (2) domicile of the injured, (3) domicile of the defendant, (4) place of contract, (5) law of the forum, and (6) location of the defendant's base of operations.[5]  As the Third Circuit explained in *Calhoun*, the *Lauritzen* factors help us to "analyz[e] which state had the most significant relationship to the incident and the dominant interest in having its law applied."  216 F.3d at 346; *see Scott v. E. Air Lines*, 399 F.2d 14, 28–29 (3rd Cir. 1967) (en banc) (applying *Lauritzen* and observing that choice-of-law rules under federal maritime jurisdiction were designed to "take into account the interest of the State having significant contact with the parties to the litigation" (internal quotation marks omitted)); *see also Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1299–1303 (11th Cir. 1999) (completing a choice-of-law analysis, although not under admiralty jurisdiction, by identifying the points of contact and then weighing the relative interests of Florida and Colombia in having their laws applied in a tort action); Restatement (Second) Conflict of Laws §§ 6(2), 145 (Am. L. Inst. 1988) (establishing factors to assist courts facing choice-of-law

---

[5] In a case like this one, where a single state is both the defendant's domicile and the location of its base of operations, these two factors merge into a single factor.

11

questions in tort cases to weigh competing jurisdictions' contacts with the dispute and the parties and their interests in having their laws applied). Next, we apply these factors to this case.

### B. Under a Domestic *Lauritzen* Analysis, Florida Law Applies Here.

Having laid out the appropriate factors to consider, we now turn to which state has the most significant relationship to the case and the dominant interest in having its law applied. Of the six factors we use to guide our analysis, two—the domicile/base of operations of the shipowner and the law of the forum—point to Florida. One—the decedent's domicile—points to Wisconsin. The remaining factors, as we will explain, do not point significantly toward either state. Based on the *Lauritzen* factors, Florida has a slightly stronger connection to the case than Wisconsin, although not so strong as to be dispositive. But when we value and compare the two states' interests, *see Lauritzen*, 345 U.S. at 582, as expressed through their wrongful death laws, we conclude that Florida law should apply here. RCL argues, despite Florida's connection and interests, that applying Florida law would conflict with our precedent or lead to untenable outcomes in future cases. Ultimately, though, we find its arguments unconvincing.

We begin by examining each state's connections to this case using the *Lauritzen* factors. Wisconsin's sole connection is as the domicile of the deceased. Florida has two connections to the case. First, Florida is RCL's domicile and base

of operations.  Although RCL is incorporated in Liberia, its operations are headquartered in Florida.  It has no claim to domicile in any other state.

Florida is also the forum state.  RCL argues that we should give no weight to the forum-state factor because the forum in a tort case is often fortuitous and therefore no indication of any real connection to the case.  RCL is correct that the Supreme Court has said the forum state often has little interest in a given case because its connection to the tort or the parties was fortuitous.  *See Lauritzen*, 345 U.S. at 590–91 (determining that the forum state's interest was of little importance to a choice-of-law analysis solely because the plaintiff happened to file there); *cf. Scott v. E. Air Lines*, 399 F.2d 18, 28 (3d Cir. 1967) (en banc) (applying *Lauritzen* and refusing to apply the law of Massachusetts, where the crash took place, in part because the location of the crash was "adventitious").  But the fortuitous nature of the connection to the forum state limits the weight we give to the forum-state factor, not whether we can consider it as a factor at all.  Moreover, here, the forum was not fortuitous.  RCL chose—and mandated—the Southern District of Florida as the forum through the forum selection clause it included in the passenger ticket contract.  Of course, forum selection clauses are distinct from choice-of-law provisions and do not dictate that the law of the forum be applied.  We have located no caselaw addressing whether we should give the forum state any weight in our choice-of-law analysis where the forum is mandated by a forum

13

selection clause.  But we cannot say that a Florida company's choice to require that all suits against it be filed in a federal district court in Florida is irrelevant in determining Florida's connection to a case.  *Cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991) (identifying the benefits to cruise lines and litigants of forum selection clauses).

The two remaining *Lauritzen* factors, the place of the wrongful act and the place of contract do not favor either Florida or Wisconsin.  Alaska is the place of the wrongful act, but neither party argues that Alaskan law should control.  We therefore do not include this factor in our analysis.  *Id.* at 584 (discarding Cuban law in choice-of-law analysis because neither party argued for it, even though the wrongful act occurred in the Havana harbor).

As to the place of contract, the parties disagree about where the contract was formed.  RCL maintains that it was formed in Wisconsin, where the Puchalskis received their cruise tickets and where their travels began.  Ms. Goodloe argues that the place of contract was Connecticut because a Connecticut travel agent purchased and received the tickets from RCL on the Puchalskis' behalf and then sent them from Connecticut to the Puchalskis.  Fortunately, we need not resolve this question to complete our analysis.  In *Lauritzen*, the Supreme Court said the place of contract should have little bearing on the choice-of-law analysis in a maritime tort case.  *Id.* at 588–89.  There, the Court declared the location fortuitous

14

and gave it little weight. *Id.* On the facts before us, where the contract was formed seems similarly fortuitous, so we do not factor it into our choice-of-law analysis.

Based on the relevant *Lauritzen* factors, Florida has a slightly stronger connection to this case. It is both the forum state and the domicile/base of operations of the defendant corporation, whereas Wisconsin's sole connection is as the domicile of the deceased. But *Lauritzen* does not counsel us to merely count each state's points of contact and choose the state with the most connections. We turn now to comparing the two states' relative interests in having their laws applied here. This juxtaposition makes clear that Florida law should govern.

In an international choice-of-law case outside the maritime tort context, we have held that "Florida . . . retains an interest in ensuring that a compensatory damages award against its own domiciliary defendants is not excessive." *Piamba Cortes*, 177 F.3d at 1301.[6] Because RCL is a domiciliary of Florida, Florida's

---

[6] *Piamba Cortes* was governed not by maritime law but by the Warsaw Convention. *Id.* at 1276. Noting that the case could be seen as arising under diversity or federal question jurisdiction, we applied the conflict-of-laws rules of both the forum state and federal common law because they were identical: both used the factors set forth in §§ 6(2) and 145 of the Restatement (Second) of Conflicts of Law to determine whether Florida or Colombian law should apply. *Id.* at 1296–1303 & n.19. Although the factors the Restatement directs courts to consider are not identical to the factors set out in *Lauritzen*, like *Lauritzen*, the Restatement's test looks at each jurisdiction's connections to the dispute and weighs them to determine which state has the "most significant relationship to the occurrence and the parties." Restatement (Second) Conflict of Laws § 145. The Restatement also resembles *Lauritzen* in that it invites the examination of, among other things, the "relative interests of [the] states in the determination of the particular issue." *Id.* at § 6(2).

15

"interest would be furthered by applying Florida's compensatory damages scheme to this case," even though the damages award against RCL would be lower if Wisconsin's law were applied. *Id.* Florida courts apply Florida law in wrongful death suits brought against Floridians, even when the death happened outside of Florida. *See Harris v. Berkowitz*, 433 So. 2d 613, 613–15 (Fla. Dist. Ct. App. 1983) (applying Florida law in a wrongful death suit over a death that occurred in Maine). By contrast, Wisconsin law does not govern, and thereby express an interest in, all wrongful death suits concerning its domiciliaries. Wisconsin's wrongful death statute has a strict territorial limitation; the statute and the accompanying damages cap do not apply to deaths caused outside of Wisconsin. *Waranka*, 847 N.W.2d at 329 ("[T]he plain language of the wrongful death statute, Wis. Stat. § 895.03, prevents its application to deaths caused outside of the state."). If a Wisconsin plaintiff brings a wrongful death action against a Wisconsin defendant in a Wisconsin forum, the court will nonetheless apply the law of the state where the death was caused. *Id.* at 332. This indicates Wisconsin's interests would not be served by applying Wisconsin law to this case. Applying Florida law, however, would further Florida's interests in wrongful death suits involving its domiciliaries.

In sum, Florida has a slightly stronger connection to this case than Wisconsin, though not so strong as to be dispositive. Instead, Florida's interest

16

dominates because its wrongful death law applies to deaths that happen outside of the state. We note, too, that this is not a case in which the plaintiff argues for the application of her home state's law, as was the case in the Third Circuit's decision in *Calhoun*. Here, the defendant is attempting to use Wisconsin law as a sword against a Wisconsin resident plaintiff. We therefore agree with the district court that Florida's law should supplement general maritime law in this case.

Before concluding, we address two counter arguments RCL makes against the application of Florida law. First, RCL argues that applying Florida law here would conflict with our decision in *Piamba Cortes*. In that case, American Airlines, a Delaware corporation headquartered in Texas, and two of its pilots, both Florida citizens, were sued for a Colombian citizen's death after an airplane crash in Colombia. *Piamba Cortes*, 177 F.3d at 1276–79. The parties disagreed over whether, under choice-of-law principles, Florida or Colombian law governed damages. The defendants urged the application of Colombian law because Florida law allowed for generous non-pecuniary damages in wrongful death suits, whereas Colombian law capped non-pecuniary damages. *Id*. at 1299–1300. After looking at each jurisdiction's connections and evaluating the respective interests of the two

jurisdictions, among other factors, we held that Florida law should apply.[7]  *Id.* at 1300–03.

RCL points to our statement in *Piamba Cortes* that "Florida . . . possesses no interest in compensating domiciliaries of other jurisdictions more richly than they would receive in their own courts."  *Id.* at 1301.  Relying on this statement, RCL contends that we should not apply Florida law here because Ms. Goodloe would be compensated more richly under Florida law than she would in a Wisconsin court under Wisconsin law.  RCL's argument ignores *Piamba Cortes*'s holding and reasoning, however.  Following the quote on which RCL relies, we explained that Florida also possessed an interest in ensuring that judgments against its own residents were not excessive.  *Id.*  In this case, Florida has the same interest in protecting its residents from excessive damages awards.  And here, as in *Piamba Cortes*, we reject the argument that we must apply Florida law simply because it

---

[7] In conducting our analysis in *Piamba Cortes*, we noted, on the one hand, that although Florida law expressed an interest in shifting the losses in wrongful deaths from the survivors to the wrongdoers, the state had no interest in compensating other jurisdictions' domiciliaries more richly than courts in their own jurisdictions would.  177 F.3d at 1301.  On the other hand, we observed, the state's interest in protecting its domiciliaries against excessive compensatory damages awards weighed in favor of applying Florida law.  *Id.*  After examining these and other interests, we found that Colombia's "compelling" interest in compensating its own domiciliaries injured on its soil was "slightly" weightier than Florida's interest in ensuring that its own domiciliaries did not face excessive damages awards.  *Id.*  We then explained that "[t]his conclusion, however, does not end our analysis under section 6(2) [of the Restatement], and we must proceed to examine the remaining factors."  *Id.*  After analyzing the remaining factors—including the ease of applying Florida law compared to Colombian law—we concluded that Florida law should apply, even though Colombia's compensatory damages scheme would have resulted in a much lower damages award against Florida's domiciliaries.  *See id.* at 1299, 1301–03.

would result in a lower damages award against a Florida domiciliary.  Although we did not explicitly say so in *Piamba Cortes*, Florida's legislature apparently does not view awards of non-pecuniary damages as excessive because, if it did, Florida law would not authorize their recovery.  Applying *Lauritzen* to this case, we reach a similar conclusion.  Although Florida has no apparent interest in allowing Ms. Goodloe to recover a larger award than she would receive in a Wisconsin court under Wisconsin law, it has another compelling interest that weighs in favor of applying Florida law.

Second, RCL argues that if we conclude Florida law applies here, it necessarily will apply in every wrongful death action against a cruise ship company based in Florida or with a forum selection clause requiring venue in Florida.  This is not so.  If, for example, Wisconsin's wrongful death law covered deaths caused outside of Wisconsin, we might well have reached a different conclusion.  Applying *Lauritzen* to the facts and circumstances of this case, we conclude that Florida has the stronger interest in having its law applied.  But our holding does not mean that Florida law will always apply to wrongful death cases against cruise ship companies based in Florida.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's ruling that Florida law governs the award of damages in this case.

19

**AFFIRMED.**